## Kaul v. Weed, Appellant.

*Deed— Grant— Timber— Grant of timber—Definition of timber.*

Where an owner of timber by deed grants " all and all manner of tim-
ber down and standing save and except hemlock timber," and it appears
that the grantees cut all the trees, except the hemlock, over and above
certain well recognized diameters, and it also appears that at the time the
deed was executed there were no chemical factories in the county, and that
no chemical or pulp wood was cut by the grantees until after the trees
had been cut for timber purposes and the logs removed, the grantees are
liable for damages for cutting and removing trees for chemical and pulp
purposes.

Argued May 6, 1902.   Appeal, No. 15, Jan. T., 1902, by
defendant, from judgment of C. P. Elk Co., April T., 1901,
No. 73, on trial by court without a jury in case of Andrew
Kaul et al. v. W. S. Weed & Company.   Before McCol-
LUM, C. J., MITCHELL, BROWN, MESTREZAT and POTTER, JJ.
Affirmed.

Trespass to recover damages for the wrongful cutting of
trees.

The case was tried by MEYER, P. J.

From the record it appeared that by deed dated Septem-
ber 23, 1890, S. S. Bullis and wife conveyed to W. S. Weed
& Company,

" All that the undivided one-half part, portion and interest
of, in and to all and all manner of timber down and standing,
save and except the hemlock timber in and on all and singular
those certain pieces, parcels or tracts of land," etc.

And which deed provided :

" It being the intention of the .party of the first part to con-
vey to the parties of the second part, their heirs and assigns, all
the several kinds of timber herein specified on all of said lands
so conveyed, subject nevertheless to the rights of the party of
the first part, his heirs and assigns, to enter said lands for the
purpose of cutting, peeling, storing and removing therefrom
the hemlock bark and timber, and the right to build, maintain,
construct and operate all such railroads, wagon roads, struc-
tures and appliances as they may deem proper for the removal

of the same.   And it is expressly understood and agreed by and between the parties hereto that the parties of the second part shall so operate and remove the lumber timber sold them in such manner as will in nowise interfere with the removal of said hemlock timber and bark."

S. S. Bullis and wife by deed dated October 23, 1891, conveyed to W. S. Weed & Company the remaining undivided one half of the timber upon said lands in the same language and upon the same terms and conditions as stated in the deed of September 23, 1890.

The title to the land subsequently became vested in plaintiffs.

The court found further facts to be as follows:

9. That W. S. Weed & Company, defendants, were wholesale lumbermen engaged in the hardwood lumber business at Bradford, Pennsylvania, and on September 23, 1890, purchased the undivided one-half interest in certain timber upon the lands in controversy and made a contract with S. S. Bullis, the owner of the other undivided one-half interest therein, and entered upon said lands in pursuance of said deed and contract and commenced operations thereon, by cutting into saw logs timber suitable for lumber, and manufacturing the same into lumber upon their mills or mills of their jobbers and continued to do so until October, 1893, before they cut any chemical wood or pulp wood.   That no chemical factories were erected in Elk county until 1894, and that prior to this time no chemical wood had been sold or marketed from these lands.   That no chemical wood or pulp wood was cut upon any of the lands at any time until the lands had been cut over for timber purposes and the logs removed.   That in October, 1893, and annually thereafter, after the timber suitable for lumber had been cut and taken from said lands for lumber purposes, the defendants by their jobbers, again went over said lands and cut the remaining trees and wood that were not suitable for lumber into pulp wood and chemical wood and removed and sold same.   That from the time defendants purchased this timber until 1898, they did not cut any beech trees for lumber purposes and that beech was not considered as timber for lumber purposes or generally used as such in the vicinity of these lands.

10. That on September 23, 1890, and October 23, 1891, the

dates of defendants' deeds, the minimum sizes for timber upon said lands were as follows: for cherry, ash and oak, eight inches in diameter at the top end of the butt log; for poplar, pine and basswood, birch and cucumber, ten inches in diameter at the top end of the butt log, and for maple twelve inches in diameter at the top end of the butt. log; and that at the dates of said deeds under the prevailing and general custom of the lumbering business in the region of these lands no trees of the kind named under the sizes above stated were considered or used for timber or lumber purposes, and that defendants by their instructions to their jobbers and in their operations in cutting and removing said timber, recognized that only trees of the sizes named and over, were suitable for timber and lumber purposes. And that the trees under the minimum sizes named were not suitable for such purposes.

11. That there were trees and wood upon these lands on September 23, 1890, the date of the defendants' purchase of the undivided one half of the timber, and also on October 23, 1891, the date of their purchase of the remaining undivided one half of the timber, that were too small in size or too inferior in quality and shape and not suitable for lumber or timber. That S. S. Bullis, the owner of the lands and the undivided one half of the timber from September 23, 1890, to October 23, 1891, did not sell or intend to sell, nor did W. S. Weed & Company, defendants, purchase or intend to purchase or acquire title to such trees or wood by said deeds of September 23, 1890, and October 23, 1891. That under the acts and declarations of the parties, and the surrounding circumstances, the parties to said deeds intended that only such timber as was suitable for lumber should be sold and conveyed by said deeds.

12. That defendant cut and removed chemical wood from said lands amounting to 38,184.30 cords, sold stumpage for wood amounting to 6,016.835 cords and 54,171 cords of toothpick wood.

13. That the market value of chemical wood and pulp wood in 1895, on the stump was twenty-five cents per cord and in the years 1896, 1897, 1898, 1899 and 1900, the average price was forty-five cents per cord, and that the market value of toothpick wood on the stump was one dollar per cord.

14. We find as a fact from the deeds of September 23, 1890,

and October 22, 1892, and the parol evidence admitted as explanatory thereof, that the word "timber" in said deeds did not include any timber except what could be manufactured into lumber, and that chemical wood and pulp wood were not within the contemplation or intention of the parties at the time the respective deeds were executed and delivered; nor was it intended to convey by said deeds any other timber except what might be used for manufacturing into lumber or other articles which could be made or constructed therefrom.

The court entered judgment for plaintiffs for $20,967.73. Defendants appealed.

*Error assigned* among others was in entering judgment for plaintiffs.

*R. B. Stone* and *John G. Johnson*, with them *George A. Berry* and *Robert L. Edgett*, for appellants.—Timber includes all sorts of wood from which any useful articles may be made or which may be used to advantage in any class of manufactures or construction: Black's Dictionary; Babka v. Eldred, 47 Wis. 189; Nash v. Drisco, 51 Me. 417; United States v. Stores, 14 Fed. Repr. 824; United States v. Schuler, 6 McLean (U. S.), 28; Bolles Wooden-Ware Co. v. United States, 106 U. S. 432; Leidy v. Proctor, 97 Pa. 486.

Trees fit for conversion into commercial products is a substantial definition of timber, accepted in the decisions and statutes of Pennsylvania: Andrews v. Wade, 4 Cent. Repr. 689.

The rule which allows extrinsic evidence to explain the extent of the subject sold has no application when a subject-matter exists which satisfies the terms of the instrument of conveyance: Harvey v. Vandergrift, 89 Pa. 346; Benson v. Miner's Bank, 20 Pa. 370; Shafer v. Senseman, 125 Pa. 310; Means v. Presbyterian Church, 3 W. &. S. 303; Springsteen v. Samson, 32 N. Y. 703; Dwight v. Germania Life Ins. Co., 4 Cent. Repr. 532; Weisenberger v. Harmony Fire, etc., Ins. Co., 56 Pa. 442; Book v. New Castle Wire Nail Co., 151 Pa. 499; Simons v. Vulcan Oil, etc., Co., 61 Pa. 202; Brown v. Orland, 36 Me. 376; Burnham v. Allen, 1 Gray, 496; Stoever v. Whitman, 6 Binn. 416; Gordon v. Little, 8 S. & R. 533; Caldwell v. Fulton, 31 Pa. 475.

*S. P. Wolverton*, with him *C. H. McCauley*, for appellee.—
Parol evidence, which is explanatory of the subject-matter of a
written contract, consistent with its terms and necessary for
its interpretation is admissible : Centenary M. E. Church v.
Clime, 116 Pa. 146; Barnhart v. Riddle, 29 Pa. 92; Gould v.
Lee, 55 Pa. 99 ; Hursh v. North, 40 Pa. 241 ; Whitesell v.
Crane, 8 W. & S. 369; First Nat. Bank v. Fiske, 133 Pa. 241;
McCullough v. Ashbridge, 155 Pa. 166; Barnard v. Kellogg,
10 Wallace, 383; Tilley v. Cook County, 103 U. S. 155.

The findings of fact are conclusive, and not reviewable in
this court: Com. v. Westinghouse Elec. & Mfg. Co., 151 Pa.
265 ; Com. v. Lehigh Valley R. R. Co., 104 Pa. 89.

Defendant under these deeds acquired only such timber as
was fit for lumber purposes at their dates: The Countess of
Cumberland's Case (1611), Moore, K. B. 812 ; Duke of Chan-
dos v. Talbot (1731), 2 P. Wms. 601 ; Rex v. Inhabitants of
Minchin-Hampton (1762), 3 Burr. 1308; Aubrey v. Fisher,
(1809), 10 East, 446; Gordon v. Woodford (1859), 27 Beav.
603 ; Foster v. Leonard (1581), 1 Cro. Eliz. 1 ; Honywood v.
Honywood, L. R. 18 Eq. 306.

By the common law of England, therefore, no tree is classed
as timber unless it belongs to a species recognized as timber
either by general law or by custom and is of twenty years'
growth: Dunn v. Bryan (1872), Ir. Rep. 7 Eq. 143.

The English rule is applicable in Pennsylvania: Aubrey v.
Fisher, 10 East, 446; United States v. Schuler, 6 McLean
(U. S.), 28 ; Fed. Cases, No. 16,234.

In Bustamente v. United States (Ariz. 1895), 42 Pac. Repr.
111, it was held that mesquite, a small tree indigenous to
deserts, used only for firewood, and not used in the manufacture
of any useful article, is not " timber " within the meaning of
Rev. St. U. S., section 2461, making it a crime to cut, etc., tim-
ber from the public lands of the United States.

In Babka v. Eldred, 47 Wis. 189, it was held that laths were
not timber, within the meaning of a statute giving a lien on
" logs and timber " for labor performed thereon.

In this country as well as in England custom plays a large
part in determining the meaning of the word " timber " : Liv-
ingston v. Van Broeck, 16 Johns. (N. Y.) 14; McCauley v.
State, 43 Tex. 374.

" Timber " means trees either growing or on the ground, before being manufactured.   " Lumber " is timber sawed or split for use in building; material essential for building any kind of a house ordinarily used for business by families : Anderson's Law Dict. ; Ward v. Kadel (1881), 38 Ark. 174; United States v. Schuler, 6 McLean, 28; Battis v. Hamlin, 22 Wis. 669 ; Gross v. Eiden, 53 Wis. 543; Babka v. Eldred, 47 Wis. 189.

A contract for the sale of timber must be governed by the common law or customary definition of timber, unless it contains its own definition: Whitty v. Lord Dillon, 2 F. & F. 67 ; Nash v. Drisco, 51 Me. 417 ; Hubbard v. Burton, 75 Mo. 65.

The deeds to the defendants only vested in them such timber as was of sufficient size at the date of the deeds to be manufactured into lumber: Shiffer v. Broadhead, 126 Pa. 260 ; Irwin v. Patchen, 164 Pa. 51.

In construing a deed its language is to be understood with reference to the circumstances attending it, as they stood at the time, and in view of the then existing conditions of the subject-matter, the state of the mechanical and scientific knowledge concerning it, and the purposes to which at that time it was applied : Sergeant v. Ingersoll (1847), 7 Pa. 340, 347 ; Appeal of the Pennsylvania Railroad Co., 125 Pa. 189 ; Wright v. Warrior Run Coal Co., 182 Pa. 514 ; Schuylkill Navigation Co. v. Moore, 2 Whart. 477 ; Focht's Estate, 2 Woodw. 269 ; Carty's App., 5 W. N. C. 241 ; Deer Lake Co. v. Michigan Land & Iron Co., 89 Mich. 180 (50 N. W. Repr. 807) ; Lehigh Zinc & Iron Co. v. N. J. Zinc & Iron Co., 55 N. J. L. 350 ; Boileau v. Heath, L. R. (1898) 2 Ch. 301; Dunham v. Kirkpatrick, 101 Pa. 36 ; Erwin's App., 20 W. N. C. 278 ; Mansfield Coal & Coke Co. v. Royal Gas Co., 44 Pitts. Legal Jour. 70.

OPINION BY MR. JUSTICE BROWN, October 13, 1902 :

The question raised on this appeal, as stated by the appellants, is, what passed to them under the grant of " all and all manner of timber down and standing save and except hemlock timber ? ". It is not needful that we trace from the Countess of Cumberland's case (1609), Moore, K. B. 812, down through the succeeding English cases to our own time the well defined meaning of the generic term timber, as trees, felled or standing, to

be used for building; and review the similar definition given it in the dictionaries and by the courts of different states in this country, as well as by the supreme court of the United States, in United States v. Schuler, 6 McLean, 28; nor need we consider the cases called to our attention in which a broader meaning seems to have been given the word, for, under the findings of the learned court below, fully justified by the evidence, the appellants seemed to have clearly understood the term at the time of the grants to them to be what the appellees contend it is—trees suitable for lumber purposes.

The learned judge to whom the case was referred found that, at the dates of the deeds to the appellants, the minimum sizes for timber upon the lands were as follows : for cherry, ash and oak, eight inches in diameter at the top end of the butt log; for poplar, pine and basswood, birch and cucumber, ten inches in diameter at the top end of the butt log, and for maple, twelve inches in diameter at the top end of the butt log; and there was a finding that the appellants, by their instructions to their jobbers, and in their operations in cutting and removing the timber, recognized that only trees of the sizes named and over were suitable for timber and lumber purposes, and that the trees under the minimum sizes named were not suitable for such purposes. There was a further finding that the timber was cut according to these sizes by the appellants' jobber, Joseph Haney, in obedience to instructions which they gave him.

At the time of the grants to the appellants, there were no chemical factories in the county, and none were erected until 1894. Prior to that year no chemical wood had been sold or marketed from these lands, and no chemical or pulp wood was cut upon them at any time by the appellants until they had been cut over for timber purposes and the logs removed. In October, 1893, and annually thereafter, after the timber suitable for lumber had been cut and taken from the lands by the appellants for lumber purposes, they, by their jobbers, again went over the lands, cut the remaining trees and wood that were not suitable for lumber into pulp wood and chemical wood, and removed and sold the same. The grantees, having unmistakably indicated by their conduct in exercising their rights under the grants to them what they understood as having passed to them under "all and all manner of timber," cannot now be heard in

support of their contention that another interpretation should be placed upon these words. " When we are asked to say what the parties meant or intended by their contract, it is entirely safe to point to their own construction of it, as evidenced by their course of dealing under it: " People's Natural Gas Co. v. Braddock Wire Co., 155 Pa. 22; and the intention of the parties at the time a contract is entered into should govern its enforcement: Erwin's Appeal, 20 W. N. C. 278. The conclusion cannot be avoided that the appellants would not be insisting that trees, which they manifestly did not regard as timber at the time of their purchase, should now be regarded as such, if in the meantime the wood had not acquired value for purposes for which timber, either in the legal or common acceptation of the term, has never been used. The proper interpretation having been given by the court below to the word " timber," as used in the deeds to the appellants, the assignments are all overruled, and the judgment against the defendants below, for damages for cutting and removing trees which they had not purchased, is affirmed.