Argued 28 Oct., decided 17 Dec., 1907, rehearing denied 10 March, 1908.

## ROOTS *v.* BORING JUNCTION LUMBER CO.

92 Pac. 811, 94 Pac. 182.

APPEAL—PARTIES ENTITLED—ACCEPTANCE OF BENEFITS.

1. Where defendant, in a suit to enjoin the cutting of timber on certain land, claims under a contract with plaintiff alleged to give the right to cut all the timber on such land, and the decree enjoins the cutting of timber under 12 inches in diameter, and defendant in the suit appeals, he will not be deemed to have accepted the benefits of the decree so as to preclude an appeal by cutting timber over 12 inches in diameter.

SAME  PROCEEDINGS FOR APPEAL—NOTICE—UNDERTAKING—FILING.

2. While it may be unnecessary for plaintiff who takes a cross-appeal to file a separate transcript, yet, where he does not file in the appellate court either his notice or his undertaking within the time for filing the transcript, the court acquires no jurisdiction of the appeal and need not notice a motion to dismiss it.

TRESPASS—PLEADING—SURPLUSAGE.

3. Where a cause of action to recover triple damages for the cutting of timber is defectively framed under Section 348, B. & C. Comp., authorizing such action, but enough is alleged to constitute a cause of action to restrain such cutting as a trespass or the commission of waste, the allegations under the statutes will be treated as surplusage, and the cause retained.

INJUNCTION—WASTE—TRESPASS.

4. Equity will interfere to restrain a trespass or stay waste threatened or being committed, where the acts complained of amount to substantial injury or destruction of the estate, or will cause irreparable damage to the plaintiff, as cutting timber, removing ore, and the like.

APPEAL—REVIEW—DISCRETION OF COURT—PLEADING.

5. The discretion of the court in permitting the filing of an amended reply, after portions of the original reply had been stricken out on motion, will not be disturbed on appeal in the absence of an abuse of discretion, and the failure to file an affidavit showing why such amended reply should be filed is not evidence of an abuse of discretion.

PLEADING—REPLY—DEPARTURE.

6. Where a complaint alleges the unlawful cutting of timber, and the answer justified its cutting by pleading two contracts, setting them out in legal effect, it is not a departure from the cause of action in the complaint to set out the contracts in full in the reply.

SAME—ISSUES, PROOF, AND VARIANCE.

7. Where a complaint, in a suit to restrain the cutting of timber, is framed on the theory of restraining a trespass of land, and the plaintiff's evidence showed, not an unlawful trespass, but a rightful entry and the commission of waste, a motion to dismiss the complaint was properly denied, since the relief sought was substantially the same.

LOGGING—SALES OF STANDING TIMBER—CONTRACTS—CONSTRUCTION.

8. Where, at the time that a contract was entered into, providing for the removal of all " saw timber " from certain land, it is shown that no cord wood was being cut on the land or in the vicinity, and that one of the contracting parties was desirous of getting the timber for his mill and intended to set up the mill near the land, and the other parties sold him the timber with that in view, the term " saw timber " should be construed to exclude the right to cut timber for cord wood, and limited to timber suitable for being manufactured into lumber or other mill products; it not being until after the season of operation of the mill that defendant claimed the right to cut other timber.

JUDGMENTS—RES JUDICATA—ESTOPPEL.

9. An owner of land entered into a contract to sell the timber thereon, and the contract was thereafter assigned. The assignee and the owner entered into an agreement modifying such contract, so that the owner had the right to cut all timber under 12 inches in diameter. The contract thereafter, by successive assignments, came into the hands of a corporation, which brought an action against the owner for the removal of timber by him, and judgment went against him, from which he did not appeal. *Held*, in an action by the owner to restrain the unlawful cutting of timber under 12 inches in diameter by the corporation, that he could show that the contract had been modified in that regard, and that the judgment against him was not an estoppel to set up such modification, though he failed to allege the modification as a defense to that suit.

INJUNCTION—TRESPASS—CUTTING TIMBER—SUFFICIENCY OF EVIDENCE.

10. In an action to restrain the unlawful cutting of. timber, evidence considered, and *held* sufficient to show that a contract on which defendant relied had been modified by a subsequent one of which defendant had knowledge.

INJUNCTION—PARTIES.

11. In a suit to enjoin defendant from cutting and removing timber from land belonging to plaintiff, one who was in no way interested in the subject-matter of the litigation, and whose connection with the matter was only be-

cause defendant's interest in the contracts in controversy were secured through him, was not a necessary party.

ABATEMENT—OTHER SUIT PENDING.

10. That plaintiff commenced an action at law against defendant for a violation of a contract giving defendant the right to cut and remove certain timber, and also brought a suit in equity to reform one of the contracts, and that such litigation is pending and undetermined, does not prevent an action to restrain the further cutting of timber in violation of the contract.

From Clackamas: THOMAS A. MCBRIDE, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is a suit by J. W. Roots against the Boring Junction Lumber Company to enjoin and restrain the defendant corporation from cutting and removing cord wood from land belonging to plaintiff. On June 28, 1902, plaintiff contracted to sell one O. A. Palmer all the "saw timber" over nine inches in diameter on certain lands belonging to him including the S. ½ of S. W. ¼ of section 31, township 1 S., range 4 E., in Clackamas County, for $10 an acre, to be paid in installments; the last payment falling due March 1, 1904. The timber was to be removed within five years from date of contract, at the expiration of which time Palmer was to surrender to plaintiff possession of the premises, and in the meantime relinquish to him any 40 acres, as soon as he removed the timber therefrom; and plaintiff reserved the right to take any timber except saw timber.

On July 21, 1902, plaintiff and Palmer entered into another contract, by which plaintiff sold to Palmer "all the timber" on the N. ½ of N. W. ¼ and W. ½ of N. E. ¼ of section 6, for $1,250, payable in installments, and allowed him five years to remove all the timber on the south side of a certain creek running through such land, and six years to remove that on the north side of said creek. It was stipulated and agreed, as part of the contract, that land from which the timber had been removed should be "turned over" to plaintiff for his use, subject to certain rights of way for roads, and that Palmer "will take and remove all the timber that he wants as his regular work of removing the timber progresses, and that he will not leave portions of timber to be removed at any later date." In case he

failed to comply with the contract, he was to forfeit all his rights thereunder, and the timber remaining on the land was to be and remain the property of plaintiff.

At the time these contracts were entered into, Palmer was the owner of a small mill, which he contemplated moving and setting up near the land in question. He commenced moving his mill soon after or about the time the contracts were executed, but before he got it into operation became financially embarrassed, and late in the fall of 1902 assigned and transferred it, together with all his interest in the two contracts mentioned, to Fred S. Morris, with plaintiff's consent. After such assignment, and on December 24, 1902, Morris and plaintiff entered into an agreement by which the terms of the above-mentioned contracts were modified, so that Morris was to pay to plaintiff $20 an acre, as stumpage, for all the timber authorized to be taken from section 31 by the contract of June 28, 1902, in lieu of the purchase price stipulated in such contract, and plaintiff was to have the right to cut all the timber under 12 inches in diameter on the land described in both the contract of June 28 and that of July 21, 1902, with the right to enter upon any of the lands mentioned in such contract, as soon as Morris removed the timber, which he was authorized to take thereunder. There were some other changes in the original contract not material here, except it was agreed that they were not to be assigned to any person, except Palmer, without plaintiff's consent.

On December 29, 1902, Morris and Palmer entered into an agreement, which, after reciting the previous assignment by Palmer to Morris of the two Roots contracts, and the conveyance to Morris of certain real estate, stipulated that, in consideration of such conveyance and assignment, Morris assumed and agreed to pay certain indebtedness of Palmer, including the purchase price of timber mentioned in the two contracts, and to put Palmer in possession of the sawmill property, and give and grant to him "the right to cut timber from any and all of said lands; the said timber to be cut as authorized by the

said two agreements, and as permitted by that certain other agreement entered into by the said Morris and the said J. W. Roots and wife, dated December 24, 1902, and it being understood that the said agreement between said Roots and wife and said Morris is personal to said Morris, and that Palmer may avail of the privileges conferred by said agreement only so long as he has possession of said property, under the said Morris and the terms hereof."

On February 19, 1903, Palmer sold to one Linton an undivided one-half interest in his sawmill and logging business and contracts, and Linton agreed "to assume one-half the contract existing between O. A. Palmer and Fred S. Morris." On March 17, 1903, Palmer and Linton organized the defendant corporation and transferred to it the sawmill and business, together with the contracts referred to, and it likewise "assumed and agreed to carry out the contract existing between O. A. Palmer and Fred S. Morris." The corporation thereupon took possession of the mill and logging business, and continued to operate the mill and take logs and timber from the lands of plaintiff described in the contracts of June 28 and July 21, 1902, until about the 1st day of March, 1905, when it shut down the mill, disposed of its logging outfit, and ceased its milling and logging operations. Soon thereafter it commenced to cut and manufacture cord wood from the timber remaining on the lands described in the contracts referred to, whereupon a dispute arose between the parties to this suit concerning their respective rights; plaintiff contending that defendant had exhausted its rights under the contract of June 28, 1902, and therefore was not entitled to take any more timber from section 31, and that under the contract of July 21, 1902, as modified by the Morris contract of December 24, 1902, defendant was entitled to no timber from section 6, except "saw timber," 12 inches and over in diameter, while defendant contended that it had a right to take from section 31 any timber not under 9 inches in diameter, and to manufacture it into cord wood or sawmill product, as it might see proper, and that it had a right to take all the timber

on the land described in section 6, regardless of its size, and whether or not it could be manufactured into lumber or other sawmill product.

Several actions and suits arose out of these controversies, on account of matters arising prior to July 1, 1905, and on November 15, 1905, plaintiff commenced this suit to enjoin and restrain defendant from further cutting or removing cord wood from his lands, and for damages for wood cut since the first of July previous. The complaint, after alleging the incorporation of defendant, avers: that, at all the times therein mentioned, plaintiff was and still is the owner of the S. ½ of S. W. ¼ of section 31, township 1 S., range 4 E., and N. ½ of N. W. ¼ and W. ½ of N. E. ¼ of section 6, township 2 S., range 4 E. of W. M., in Clackamas County; that between the 1st day of July, 1905, and date of filing the complaint, defendant wrongfully and unlawfully, and without authority from plaintiff, entered upon the lands above described and did wrongfully and unlawfully cut and remove therefrom, and convert to its own use, about 2,000 cords of wood, belonging to plaintiff, of the reasonable value of $1,000, to his damage in that sum; that the wood was cut and removed by defendant without any right or license so to do, and on account thereof plaintiff is entitled to treble damages as provided in Section 348, B. & C. Comp.; that there yet remains on such premises a large amount of growing trees and timber, suitable for cord wood, and of great value to plaintiff; that defendant has a large force of men and teams engaged in cutting and hauling the trees and timber from such premises and converting the same into wood, in the aggregate amount of from 500 to 600 cords per month, and intends to and will, unless restrained by an order of the court, continue to cut and haul such timber, and thereby injure and destroy the value of plaintiff's estate, and lead to oppressive litigation and multiplicity of suits; that defendant has no property, real or personal, in this State or elsewhere, out of which a judgment could be made for damages complained of; that it is now, and has been for several years last past, insolvent; that, notwithstanding the

actions theretofore brought in this court and now pending, defendant intends to and will employ every dilatory plea and device to postpone the hearing of said actions until all the timber and wood on the premises referred to is cut and removed, and the proceeds converted to defendant's use and benefit, to the great and irreparable loss, injury, and damage of plaintiff; that plaintiff has no plain, speedy or adequate remedy at law—wherefore he prays that he may have judgment against defendant for treble the damages sustained, and an injunction restraining it from further cutting or removing wood from the land described in the complaint.

Upon the filing of the complaint, a preliminary injunction was issued, enjoining and restraining defendant from trespassing upon the premises described in the complaint, or from cutting or removing wood or timber therefrom, until further order of the court. On November 18, 1905, defendant filed an answer, in which it admits that plaintiff is the owner of the lands described in the complaint, but denies that he is or has since July 21, 1902, been the owner of any of the timber on the land described as being in section 6; or that he has been the owner of any of the saw timber over nine inches in diameter on the land located in section 31, since the 28th of June, 1902.

For a further and separate answer to that part of the complaint charging trespass or waste on the land situated in section 6, it was averred that on July 21, 1902, plaintiff, for a valuable consideration, sold all the timber on such land to O. A. Palmer, with full right to remove all the timber on the south side of the creek that runs through the land, within five years from date, and on the north side of the creek within six years; that Palmer sold and assigned a one-half interest in the contract and timber to A. J. Linton, with the knowledge and consent of plaintiff; that on March 17, 1903, Palmer and Linton sold and assigned the contract and timber to defendant corporation with the full knowledge and consent of plaintiff, and ever since such date defendant has been the owner of all such timber and engaged in disposing of it in the regular course of its business; that

Palmer and his assignee have in all things complied with the contract between him and plaintiff; that on or about February 1, 1905, a dispute arose between plaintiff and defendant as to the ownership of the timber on section 6, and to settle such dispute defendant commenced an action at law against plaintiff in the Circuit Court of the State of Oregon, for Multnomah County, in which it alleged the making of the contract of July 21, 1902, between Palmer and Roots, the assignee thereof, to defendant corporation, its ownership of all the timber on the land referred to, and that on or about May 1, 1904, plaintiff, without its permission, wrongfully went upon such land and cut and removed therefrom about 40 cords of wood, and converted the same to his own use, to its damage in the sum of $20, and prayed judgment against him for that amount; that plaintiff answered the complaint denying each and every allegation thereof; that upon the issues thus joined the action came on regularly for trial on March 8, 1905, before the court without intervention of a jury; that the court found the allegations of the complaint as to the ownership of the timber to be true, and that on or about May 1, 1904, plaintiff wrongfully went upon the land and cut and removed therefrom about 20 cords of wood from timber belonging to defendant of the value of $10, and rendered judgment against him for that sum, together with costs and disbursements; that no appeal has been taken from such judgment, and it has become final; that by reason thereof plaintiff is now estopped to allege or claim ownership or title to any of the timber on the land described in section 6. The answer further alleges that the present suit, so far as it relates to this particular tract of land, was begun maliciously for the purpose of damaging defendant and to break up its business; that it has a large number of men and teams employed to cut and market the timber, and that it has and will suffer a very large amount of damage if the preliminary injunction is continued. It then alleges the commencement of a suit by plaintiff against defendant to reform the contract of July 21,

1902, and that such suit is still pending and undetermined; and also, the commencement of an action at law on March 30, 1905, by plaintiff against defendant, and that such action is still pending.

For a further and separate answer to that part of the complaint charging trespass or waste on the land described in section 31, it is alleged that on June 28, 1902, for a valuable consideration, plaintiff sold to O. A. Palmer all saw timber on such land over nine inches in diameter, with the right to remove the same in five years from date; that Palmer sold and assigned a one-half interest in the contract and timber to Linton, and on March 17, 1903, he and Linton sold and assigned the same to defendant company, with the full knowledge and consent of plaintiff, and defendant has been ever since that date, and is now, the owner of the timber with the full right to remove the same; that defendant has paid for all the saw timber on such premises over nine inches in diameter, and is now engaged in cutting and removing the same in the regular course of its business, and does not intend to cut and remove any other timber than such as is described in the contract referred to; that plaintiff has brought numerous actions against defendant for treble damages, under Section 348, B. & C. Comp., for cutting this saw timber, and defendant has been promptly defending such actions, and has not unnecessarily delayed the same; that plaintiff brought this suit for the sole purpose of maliciously inflicting damages upon defendant; that it is a solvent corporation with ample funds to pay its debts; that it has a large force of men and teams engaged in cutting and removing timber in section 31, in the regular course of its business; and that it will be greatly damaged if enjoined and restrained from proceeding with such work.

To this answer plaintiff filed a reply, in which he denies that by the contract of July 21, 1902, he sold to Palmer all the timber on the land in section 6, or any timber on said land, except under and by virtue of a certain contract in writing of that date, the original of which is annexed and made a part of

the answer, and, by certain amendments and modifications thereto, that the litigation set out in defendant's answer between it and plaintiff in the circuit court of Multnomah County did not relate to any timber or wood involved in the present suit.   It also denies that plaintiff sold to Palmer all the saw timber on land described in section 31 over nine inches in diameter, or of any diameter, except under and by virtue of a certain contract and bill of sale dated June 28, 1902, which is annexed and made a part of the reply, and certain amendments thereto.   For a further and separate reply, it is alleged that on the ——— day of ———, 1902, Palmer for a valuable consideration, sold, assigned and transferred all of his right, title and interest in the two contracts, referred to in defendant's answer, of dates, respectively, June 28 and July 21, 1902, to Fred S. Morris, which agreement was assented to by plaintiff, and Morris is now the owner of the contracts and all interest therein; that after such assignment, and while Morris was the owner of such contract and all interest therein, he made and entered into a contract in writing with plaintiff, a copy of which is annexed and made a part of the reply, by which certain changes, amendments, and modifications were made in the contracts between Palmer and plaintiff; and that all wood and timber described in plaintiff's complaint, and to which he claims ownership, is his property under and by virtue of conditions, reservations and exceptions set out in the contracts of June 28 and July 21, 1902, as modified by the Morris contract of December 24, 1902, and was expressly reserved to plaintiff under and by virtue of such contracts.

On November 18, 1905, the preliminary injunction was vacated by the trial court, so far as it relates to land in section 6, and continued in force as to the other land described in the complaint.   On motion of defendant certain parts of the reply were thereafter stricken out, and defendant permitted by the court to file an amended reply, which is substantially the same as the original, except that it alleges that defendant's interest in the contracts or agreements of June 28 and July 21, 1902,

were acquired subsequent to and subject to the modifications thereof as made by Morris and plaintiff on December 24, 1902; that under and by virtue of the contract of June 28, 1902, as so modified, plaintiff sold only the saw timber on the land described in section 31, over 12 inches in diameter, and all timber under that diameter and such as was unsuitable for saw logs was to remain his property; that by such contract Palmer and his assignee agreed to relinquish and surrender to plaintiff any 40 acres of land described in the agreement as soon as the timber was logged off, and the plaintiff reserved the right to enter on any of the land described in the contract, and clear, slash, fence, or grub and remove any or all timber except saw timber; that long before July 1, 1905, defendant removed all saw timber from the land in section 31, and surrendered the possession thereof to plaintiff; that the only timber left on the land after it was logged off by defendant was that under 12 inches in diameter, or such as was decayed or unfit for saw timber, and which defendant left on the premises as its logging operations progressed; that under the contract of July 21, 1902, and the subsequent modifications thereof by the agreement between plaintiff and Morris of date December 24, 1902, plaintiff only sold the saw timber over 12 inches in diameter on the land in in section 6, and such contract contained a provision that Palmer and his assignee "will take and remove all the timber that he wants as his regular work of removing the timber progresses, and he will not leave portions of the timber to be removed at any later date"; that long before the 1st day of July, 1905, defendant logged over the premises in section 6 and removed all the saw timber thereof and such as it wanted under its contract, and thereupon surrendered possession thereof to plaintiff; that all the cord wood and timber described in plaintiff's complaint, cut by defendant on section 6, was cut out of timber under 12 inches in diameter and out of timber unsuitable for saw logs, all of which was reserved to plaintiff under the agreements referred to; that after the land was logged off by defendant, and the saw timber removed therefrom, and after

it had been surrendered to plaintiff, defendant again re-entered and cut and hauled away the cord wood mentioned in the complaint, which was and is the property of plaintiff under and by virtue of his ownership of the land and the provisions of the contracts mentioned.

Upon the issues thus joined the cause was tried, and after a personal inspection of the premises, the court held and found that the words "saw timber," as used in the agreement of June 28, 1902, under which defendant corporation claims the right to timber on section 31, was intended to and did mean timber fit and suitable for sawing into lumber for commercial purposes; that prior to the 1st day of July, 1905, defendant took all such timber from the land described in the contract, except from a strip about 11 rods wide extending across the east end of the S. ½ of S. W. ¼ of said section; that the contract of July 21, 1902, between plaintiff and Palmer, was so modified, after the assignment thereof to Morris by the contract of December 24, 1902, between plaintiff and Morris, that nothing passed to the grantee under such contract, except timber on the land therein described, 12 inches in diameter and upwards; that plaintiff reserved all the timber under that size; that defendant had succeeded to the rights of Morris under such contract and was entitled to take thereunder all the wood and timber 12 inches in diameter and upwards, but no other; that between July 1 and November 15, 1905, defendant entered upon the lands described in the complaint and from the timber on section 31, and from trees and timber less than 12 inches in diameter on section 6, cut and hauled away about 1,000 cords of wood, to plaintiff's damage in the sum of $350; that it cut on section 31 and left on the ground a large quantity of trees and wood, the property of plaintiff; that it also cut and converted into cord wood on section 6, and mingled with other wood which it had a right to cut, a number of trees of less than 12 inches in diameter, which were the property of plaintiff, to his damage in the sum of $30; that the cutting down and hauling away of trees and timber on section 6, less than 12 inches in diameter,

would greatly impair and destroy the value of the estate; that defendant claims the right and was engaged, at the time of the commencement of the suit and the rendition of the decree, in cutting and carrying away all the timber on section 6, and all trees and timber on section 31 over 9 inches in diameter, and, unless restrained by order of the court, will cut and remove all such timber and trees, to plaintiff's great and irreparable damage; that on the 1st day of July, 1905, plaintiff was, and ever since has been, entitled to all the trees and timber on section 31 and the wood cut by defendant and remaining thereon, except the saw timber in the strip 11 rods wide above mentioned, and of all timber less than 12 inches in diameter on section 6; that defendant has the right to take from the land in section 6 the wood already cut by it and all timber and trees of the diameter of 12 inches and upwards, at any time during the life of the contract, but that it has no right to take any other timber from such land, and no right to take or remove any timber or wood whatever from section 31, except saw timber from the strip 11 rods wide previously mentioned, and that plaintiff was entitled to a judgment against defendant for $350 for damage sustained by its wrongful cutting and removing timber belonging to him, since the 1st of July, 1905. A decree was thereupon entered accordingly, and defendant perpetually enjoined and restrained from taking any wood or timber from section 31, and any timber from section 6, less than 12 inches in diameter. From this decree, defendant appeals.                    Affirmed.

For appellant there was a brief and oral argument by *Mr. Ralph R. Duniway.*

For respondent there was a brief and oral arguments by *Mr. Harvey E. Cross* and *Mr. Charles H. Dye.*

Mr. Chief Justice Bean delivered the opinion.

1. By the decree from which this appeal is taken, the defendant was enjoined and restrained from cutting or removing any timber or wood, whether cut or otherwise, from section 31, regardless of its size, quality or dimensions, except the saw

timber from a strip 11 rods wide along the east end of the S. $\frac{1}{2}$ of S. W. $\frac{1}{4}$ of such section, and it was also enjoined and restrained from cutting or removing any trees or timber from section 6 under 12 inches in diameter; but it was authorized and permitted to take, at any time during the life of the contract, all the trees or timber on section 6, 12 inches and upwards in diameter, whether suitable for manufacturing into lumber or not. After the rendition of the decree, defendant continued to cut and manufacture, into cord wood, trees 12 inches and upwards in diameter from the land mentioned. Plaintiff now moves to dismiss defendant's appeal on the ground that, by thus continuing to cut and remove wood, it accepted the benefits of the decree, and therefore cannot appeal therefrom. The law is well settled that a party cannot claim the benefit of a judgment or decree and at the same time appeal from it. The right to appeal and to enjoy the fruits of a judgment or decree are totally inconsistent, and an election to take one course is a renunciation of the other: *Moore* v. *Floyd,* 4 Or. 260; *Portland Construction Co.* v. *O'Neil,* 24 Or. 54 (32 Pac. 764); *Bush* v. *Mitchell,* 28 Or. 92 (41 Pac. 155). But the defendant in cutting and removing wood from section 6, was not acting under the protection of the decree or by virtue of any rights given it thereby, but under a contract with the owner of the land. The plaintiff sought by this suit to enjoin it from taking any trees or timber under 12 inches in diameter and any timber over that size, except such as was suitable for being manufactured into lumber. The court granted the relief prayed for as to trees under 12 inches in diameter, and refused it as to all over that size, thereby leaving defendant to proceed, so far as such timber was concerned, as if no suit had been brought.

2. It is not necessary to consider what defendant's situation would have been if plaintiff had appealed from that portion of the decree refusing to enjoin it from taking or cutting such timber, and given a stay bond. The record, however, does not disclose that the plaintiff did so appeal, although it was said at the argument that, after defendant's appeal, plaintiff took a

cross-appeal, and a motion is on file to dismiss such cross-appeal. No notice or undertaking on such appeal has been filed in this court, and therefore the appeal, if taken, has never been perfected. While it may not be necessary where both parties to a judgment or decree appeal, to file separate transcripts, it certainly is essential that the notice and undertaking on· an appeal shall be filed within the time provided by law in which to file a transcript, or otherwise this court does not acquire jurisdiction of the appeal. Since the plaintiff has not complied with this rule, it is unnecessary to consider the motion to dismiss his appeal, or any of the provisions of the decree of which he complains.

3. We pass then to a consideration of the questions arising on defendant's appeal. It is insisted at the outset that the court is without jurisdiction, because this is a proceeding, under Section 348, B. & C. Comp., to recover treble damages for the wrongful and unlawful cutting of timber on plaintiff's land. The reference in the complaint to Section 348 and the allegations attempting to state a cause of action under such section may be treated as surplusage, as was done by the trial court, and enough remains to constitute a cause of suit for injunction to restrain a trespass or the commission of waste.

4. It is alleged in the complaint that plaintiff is the owner of certain described lands, and that there is growing and standing thereon a large quantity of trees and timber suitable for cord wood of great value to plaintiff; that between certain dates, defendant wrongfully and unlawfully entered upon such lands and cut and removed therefrom 2,000 cords of wood; that it has a large force of men and teams engaged in cutting and hauling timber and wood from such premises, and threatens to and will, unless restrained, remove the wood and timber therefrom, to the irreparable injury of plaintiff's estate, and to his great damage. These are facts sufficient for injunctive relief, for the rule is firmly established in this state that a court of equity will interfere to restrain a trespass or stay waste, threatened or being committed, when the acts complained of go to the

substantial injury or destruction of the estate or will cause irreparable damage to the plaintiff, such as cutting timber, removing ore, and the like: *Allen* v. *Dunlap,* 24 Or. 229 (33 Pac. 675); *Mendenhall* v. *Harrisburg Water Co.,* 27 Or. 38 (39 Pac. 399); *Sheridan* v. *McMullen,* 12 Or. 150 (6 Pac. 497); *Smith* v. *Gardner,* 12 Or. 221 (6 Pac. 771: 53 Am. Rep. 342); *Elliott* v. *Bloyd,* 40 Or. 326 (67 Pac. 202). *Allen* v. *Dunlap,* 24 Or. 229, was a suit to enjoin a trespass on a mining claim. Objection was made to the jurisdiction of the court, but Mr. Justice LORD says:

"The general rule that a court of equity will refuse to take jurisdiction and award even a temporary injunction, in cases of a mere trespass, is conceded; but there is an established exception in cases of mines, timber and the like, in which an injunction will be granted to restrain the commission of acts by which the substance of an estate is injured, destroyed or carried away. In such case, the injury being irreparable or difficult of ascertainment in damages, the remedy at law is inadequate."

*Mendenhall* v. *Harrisburg Water Co.* 27 Or. 38 (39 Pac. 399), was a suit to enjoin the defendant from taking possession of land belonging to plaintiff and cutting timber and enlarging a ditch thereon, and the court sustained the suit and granted the injunction. In that case Mr. Justice MOORE, after quoting from *Smith* v. *Gardner,* 12 Or. 221 (6 Pac. 771: 53 Am. Rep. 342), said:

"In the case at bar the evidence shows that the defendant threatened to widen the ditch beyond the limits of its right of way, and throw the material taken therefrom upon plaintiff's land; to construct and maintain a dam, the backwater from which would destroy the ford used by the plaintiff and her husband; and to cut and destroy the timber growing along the banks of the ditch outside of the right of way. The injury complained of is more than a mere trespass; it goes to the destruction of plaintiff's estate."

*Sheridan* v. *McMullen,* 12 Or. 150 (6 Pac. 497), was a suit by a landlord against his tenant to enjoin him from cutting timber on leased premises. The jurisdiction of a court of

equity was challenged on the ground that plaintiff's remedy was by an action at law for damages, but Mr. Justice Lord says:

"The remedy by injunction to stay waste, threatened or being committed, has been so often asserted, and is now so fully established, that the jurisdiction is seldom questioned. It has almost entirely superseded the common-law action of waste, and in a great measure taken the place of the action on the case for damages, ordinarily resorted to whenever any remedy is sought at law, because of their inadequacy in many cases, and the remedy by injunction is so much more expeditious and complete."

In support of this position, the learned justice cites *Fleming v. Collins,* 2 Del. Ch. 230, in which it was held that the cutting of timber is an injury of irreparable nature and remediable in equity, by whosoever committed, and that equity, having jurisdiction to restrain waste, will decree an account and satisfaction for the waste committed. He also refers to and quotes approvingly, Judge Story's summary of this equitable jurisdiction, in which he says:

"The inadequacy of the remedy at common law, as well to prevent waste as to give redress for waste already committed, is unquestionable, and there is no wonder that the resort to the court of law has in a great measure fallen into disuse. * * The remedy by a bill in equity is so much more easy, expeditious and complete, that it is almost invariably resorted to. By such a bill not only may future waste be prevented, but, as we have already seen, an account may be decreed and a compensation given for past waste: 2 Story, Equitable Juris. § 917.

In *Livingston* v. *Livingston,* 6 Johns. Ch. (N. Y.) 497 (10 Am. Dec. 353), Chancellor Kent says: "This protection (by injunction) is now granted in case of timber, coals, lead ore, quarries, etc." *Elliott* v. *Bloyd,* 40 Or. 326 (67 Pac. 202), was a suit to enjoin defendant from taking and removing timber from land belonging to plaintiff not included in a contract between the parties, by which plaintiff sold to defendant certain described timber on such land. In that case, also, the jurisdiction of a court of equity was questioned; but it was held that under the settled rules of equitable jurisdiction the court

would interfere to restrain the threatened waste. This same principle was announced and applied by this court in other cases cited.

5. It is also contended that the court erred in permitting plaintiff to file an amended reply, after portions of the original reply had been stricken out on motion; but this was a matter resting within the sound discretion of the trial court, and its judgment thereon will not be disturbed on appeal, unless it appears there was an abuse of such discretion. Nor does the fact that plaintiff's application to file such amended pleading was not supported by an affidavit showing why he should be permitted to do so. The court allowed his application, and before its ruling can be disturbed on appeal, it must affirmatively appear that it erroneously exercised its discretion. Where a court refuses to permit an amended pleading to be filed, its judgment likewise will not be disturbed, unless it appears from a supporting affidavit, or otherwise, that it was an abuse of discretion to deny such application: *Garrison* v. *Goodale,* 23 Or. 307 (31 Pac. 709).

6. It is also insisted that the reply as filed constituted a departure from the cause of suit set up in the complaint. The defendant justified its right to cut or remove the timber or wood in controversy under and by virtue of two certain contracts, which it claims to have with plaintiff, but which are not set out in the answer, except in legal effect. To meet this defense, plaintiff by his reply pleads the terms of these contracts for the purpose of showing that the timber or wood in question did not come within the provisions thereof. The reply, therefore, is not a departure from the complaint or a new assignment of a cause of suit. It would probably have been better pleading if plaintiff had referred to, and set out, these contracts in his complaint, and then averred that the wood and timber, which he says defendant is wrongfully and unlawfully taking and threatening to take from his land, did not come within the terms of the contract; but it was not absolutely essential for

him to do so, nor did the making of such averments in the reply substantially change the cause of suit.

7. It is claimed that defendant's motion to dismiss the suit, made at the close of plaintiff's testimony, should have been sustained, because the evidence shows that defendant was not. in fact, a trespasser, but had a right, under its contracts with plaintiff, to enter upon the property in controversy for the purpose of cutting and removing certain timber, and that it is liable, if at all, for waste in cutting timber to which it was not entitled under such contracts, and therefore the plaintiff's remedy should have been by suit to. restrain waste, and not to enjoin a trespass. Technically there is a difference between "waste" and "trespass." "Waste" is some unauthorized act which goes to the injury or destruction of an estate committed by one in the rightful possession thereof, while "trespass" is the act of a mere intruder. But, as we have seen, there is no substantial distinction, so far as the remedy is concerned. The law gives for trespass, by which the substance of an estate is injured or destroyed, and which cannot be adequately compensated in damages, the remedies for waste (30 Am. & Eng. Enc. Law (2 ed.), 258), and therefore, while in a technical sense the appropriate remedy for the plaintiff, under the facts disclosed by the testimony, would have been a suit to restrain waste, rather than a suit to enjoin a trespass, the relief sought is substantially the same, and the technical form of the pleading could have worked no injury to the defendant.

8. This brings us to the merits. So far as the controversy concerning the timber on section 31 is concerned, the result depends upon the construction of the word "saw timber," as used in the contract between plaintiff and Palmer of June 28, 1902. The court below found that prior to July 1, 1905, defendant had taken from such land all the timber fit for lumber, except that upon a strip about 11 rods wide extending across the east end of the land, and in this view we concur, after a careful reading of the testimony. The evidence shows that the greater part of the land was "logged off" during the winter of

1902-03, and the remainder the following season; that all the timber suitable for milling purposes was taken, and defendant quit logging and removed its engines and logging appliances, and plaintiff took possession of the premises and began cutting cord wood thereon; that about the 1st of March, 1905, defendant, finding its lumber business unprofitable, shut down its mill and soon thereafter re-entered and began cutting cord wood from tops of trees left on the ground during its logging operations, and from "wind falls" and unsound timber rejected by the loggers; that up to the time of the commencement of this suit it had taken and remvoed about 700 cords, and was then engaged in removing wood at the rate of 40 or 50 cords a day.   Defendant claims that it was entitled, under its contract with plaintiff, to take all the timber under nine inches in diameter, whether suitable for lumber or not.   It is common learning that the construction to be given to a contract or agreement must have reference to the time and circumstances under which it was made.   When so construed, there can be no reasonable doubt as to the meaning of the word "saw timber" as used in the contract between plaintiff and Palmer.   At the time the contract was made, no cord wood was being cut on the land or in the vicinity; nor was any such use of the timber contemplated by either of the parties.   Palmer was the owner of a sawmill which he intended setting up on land adjoining or near to the tract in question.   He was desirous of acquiring timber for use at his mill, and plaintiff was intending to sell him timber for that purpose.   Neither party was contracting with any other end in view, and when they used the word "saw timber," as qualifying or describing the character of timber sold and purchased, they necessarily intended it to limit the grantee's right to timber suitable for being manufactured into lumber or other mill product.   And this is the construction put upon the contract by the grantee.   After the timber suitable for milling purposes had been removed from the land, defendant ceased its operations and removed its logging appliances, and it was not until it shut down its mill that it made any claim or con-

tention that it had a right to take any timber other than such as was suitable for milling purposes. Having thus unmistakably indicated by its conduct what it understood by the term "saw timber," it cannot now be heard to insist that another interpretation be placed upon these words: *Kaul* v. *Wend,* 203 Pa. 586 (53 Atl. 489); *Dexter* v. *Lathrop,* 136 Pa. 565 (20 Atl. 545).

9. Two questions arise in the consideration of the controversy over the timber on the remainder of the land described in the complaint: First, whether the judgment in favor of defendant, in the action brought by it against plaintiff in the circuit court for Multnomah County, to recover the value of cord wood cut by him on the land, is a bar or an estoppel to this suit, and, if not, whether defendant is bound by the terms of the contract of December 24, 1902, between plaintiff and Morris, modifying the contract of July 21, 1902, as to limit the rights of the purchaser to timber 12 inches and upwards in diameter. A reference to the pleadings and findings in the former action is necessary to an intelligent understanding of the question involved in the plea of former adjudication. The complaint in such action, after averring the incorporation of the Boring Junction Lumber Company, alleges that on July 21, 1902, Palmer purchased of Roots all the timber on the land in question, and paid him therefor, and subsequently sold and transferred all his rights under such contract to the company, and it is, and during all times mentioned in the complaint has been, the owner of such timber; that on or about the 1st day of May, 1904, Roots, without its permission, went upon the land, cut and converted to his own use, about 40 cords of wood from timber then belonging to it, of the reasonable value of 50 cents a cord, and prayed judgment for that amount. The answer is a general denial of the allegations of the complaint, and the findings of fact are substantially a copy of such allegations, except as to the amount of wood cut and removed by Roots.

The law is well settled that, when a fact has been once litigated in a court of competent jurisdiction, the judgment rendered thereon is, as a plea, a bar, or, as evidence, conclusive

between the same parties upon the same matter directly in question in another action. But a judgment in one action is a bar or an estoppel in another action between the same parties upon a different claim or demand, only as to the point actually litigated and determined, and does not extend to questions which might have arisen and been litigated: *La Follett* v. *Mitchell,* 42 Or. 465 (69 Pac. 916: 95 Am. St. Rep. 780). Thus, in an action for rent under a building contract, the defendant pleaded a subsequent agreement changing the tenancy into one from year to year, and its determination by notice to quit. The plaintiff replied that he had recovered judgment in a former action against defendant for rent under the same agreement, which had accrued after the alleged determination of the tenancy, and in which the defendant did not set up the defense pleaded in the second action. The replication was held bad on demurrer, and Mr. Justice WILLIS said: "It is quite right that a defendant should be estopped from setting up in the same action a defense which he might have pleaded, but has chosen to let the proper time go by. But nobody ever heard of a defendant being precluded from setting up a defense in a second action because he did not avail himself of the opportunity of setting it up in the first action": *Howlett* v. *Tarte,* 10 C. B. N. S. 813. So, also, a judgment in favor of a county, in an action to recover on certain coupons attached to bonds issued by the county, does not estop the plaintiff in such action from showing, in an action on other coupons attached to the same bonds, that he acquired such coupons and bonds for value before maturity; that question not having been adjudicated in the former action: *Cromwell* v. *County of Sac,* 94 U. S. 351 (24 L. Ed. 195).

There is a difference between the effect of a judgment as a bar or estoppel in another action between the same parties upon a different claim or demand, and in a second action upon the same claim or demand. In the latter case, the judgment, if upon the merits, is an absolute bar, and conclusive not only as to every matter that was actually litigated, but also to every

matter that might have been litigated. But in the former the judgment is a bar or estoppel only as to those matters that were directly in issue and determined. Now, applying these principles to the case at hand, its solution is not difficult. The case of the lumber company against Roots was upon a different claim or demand from the one now in suit. It was an action in the nature of trespass to recover damages for taking timber belonging to the company. As an inducement to its right to recover, the company alleged the purchase by Palmer from Roots of all the timber on certain described lands on July 21, 1902, the subsequent transfer by Palmer of his rights under the contract to defendant, the entry of Roots on such land, and the cutting and removal of 40 cords of wood by him from the timber belonging to the company. These averments were denied by Roots. The only issues, therefore, presented by the pleadings or tried by the court, were the validity of the contract of July 21, 1902, the assignment of such contract to defendant, its legal effect, and the amount of wood cut and removed by Roots. Upon these questions the judgment is conclusive, but there was no issue as to any subsequent modifications of the contract and no findings upon that question. Roots did not set up any such defense, and is not concluded by the judgment because he might have done so but did not. "It is not believed," says Mr. Justice Field, in *Cromwell* v. *Sac County,* 94 U. S. 351 (24 L. Ed. 195), that there are any cases going to the extent that, because in the prior action a different question from that actually determined might have arisen and been litigated, therefore such possible question is to be considered as excluded from consideration in a second action between the same parties on a different demand, although loose remarks looking in that direction may be found in some opinions. On principle, a point not in litigation in one action cannot be received as conclusively settled in any subsequent action upon a different cause because it might have been determined in the first action." The judgment in the former action was, therefore, in no way a bar to the present suit, since the point now made, that the contract of July 21, 1902, between

Palmer and Roots, was subsequently so modified that the right of the grantee and his assignee to cut timber, was confined to that 12 inches and upwards in diameter.

10. The other question is one of fact. The defendant claims that it is not bound by the contract between Morris and Roots, of December 24, 1902, and at the time it acquired its rights to the timber in controversy, it had no knowledge of such contract or the terms thereof. But this position is not supported by the testimony. Some time prior to December 24, 1902, Palmer assigned and transferred to Morris his mill property and all his rights under the contracts with Roots of June 28 and July 21, 1902, and on the day named, Morris and Roots entered into a written agreement, in which it was stipulated that Morris would pay Roots $20 an acre in lieu of the compensation mentioned in the contract of June 28th for the timber he was authorized to cut on the land in section 31, and that Roots "shall have the right to cut all the timber under 12 inches in diameter on land described in said contract of July 21, 1902, as well as the land described in the contract dated June 28, 1902," and the right to "enter upon any of the land described in said two agreements and cut the timber thereon authorized by him to be cut," as soon as Morris shall have cut and removed the timber to which he is entitled. Four days later, Morris retransferred the mill property to Palmer, together with the right to cut timber from the lands described in the two contracts referred to, "the said timber to be cut as authorized by said two agreements and as permitted by that contract or agreement" entered into by him and Roots of date, December 24, 1902, and Palmer agreed to pay Morris $1 per thousand as stumpage. Subsequently Palmer sold one-half interest in his business and the contracts in question to Linton, who agreed in writing to assume one-half of the contract existing between Palmer and Morris, and thereafter Linton and Palmer sold and transferred the mill property and contracts to the defendant, and it likewise stipulated and agreed in writing to assume and

carry out such contracts. It thus appears that, at the time defendant acquired its rights to the timber in controversy, it was not only advised of the contract between Morris and Palmer, modifying the previous contracts, but expressly agreed to comply therewith, and it must therefore necessarily have known the terms thereof. It is one of muniment to its title, and its rights are to be determined thereby.                Decree Affirmed.

<hr />

Decided 10 March, 1908.

On Motion for Rehearing.

94 Pac. 182.

Mr. Chief Justice Bean delivered the opinion.

11. It is insisted that Morris is a necessary and proper party to this suit. But he is in no way interested in the subject-matter of the litigation, nor are any of his rights involved. His connection with the matter is only because appellant's interest in the contracts in controversy were secured through him, and its rights are to be determined by the original contracts as modified by himself and Roots. Such modified contracts are the muniments of appellant's title, and Morris is no more a necessary party to the litigation than a grantor in one of the deeds in the chain of plaintiff's title would be in an action to recover real property.

12. It is also contended that plaintiff ought not to be permitted to maintain this suit, because in March, 1905, he commenced an action at law against the defendant for a violation of the terms of one or both of the contracts in question, and in April of the same year brought a suit in equity to reform one of them, and that such litigation was pending and undetermined at the time this suit was commenced; but it arose out of matters occurring prior to the cause of suit set out in the present complaint, and has no connection therewith, other than it may have arisen out of the same contract. It is perhaps true that a plaintiff cannot proceed at the same time in equity and at law upon the same claim or demand, and that, when he

comes into a court of equity, he is bound to put under its control all his legal rights relating to the whole subject-matter of the litigation: *Eastman* v. *Amoskeag Mfg. Co.* 47 N. H. 71; *Prothero* v. *Phelps,* 7 DeGex M. & G. *722. This suit is founded on matters arising subsequent to July 1, 1905.

Other questions are discussed in the petition, but they are substantially covered by the opinion heretofore filed. The record shows, we think, that defendant has taken all the timber from section 31 to which it is entitled, except the saw timber from the strip 11 rods wide, and, as the court below decided, it is entitled to take, at any time during the life of the contract, all the timber 12 inches and upwards in diameter from section 6, whether suitable for manufacturing into lumber or not. The modification of the contracts by Morris and Roots, to the effect that the latter should have the right to cut and remove all timber under 12 inches in diameter, was manifestly intended to restrict, rather than to enlarge, the rights of the vendee under such contracts, and cannot by any fair construction be held to entitle Morris or his assignee to any saw timber from section 31.

Petition denied.        AFFIRMED: REHEARING DENIED.