Argued 9 December, 1901; decided 6 January, 1902.

## ELLIOTT *v.* BLOYD.

[67 Pac. 202.]

EQUITABLE JURISDICTION TO RESTRAIN WASTE.

1. Where there is a privity of estate between the parties the owner of real property may sue to restrain threatened or partly accomplished waste thereon: *Sheridan* v. *McMullen,* 12 Or. 150, and *Bishop* v. *Baisley,* 28 Or. 119, applied.

JOINDER OF PARTIES—MULTIFARIOUSNESS.

2. Where the owners of different parcels of land contract jointly with another concerning their combined property, such owners may join in a suit to restrain waste on the leased ground.

CONSTRUCTION OF TIMBER CONTRACT.

3. An agreement between the owners of land and another recited that the owners sold the other all the saw timber on the land at a certain price per thousand feet, board measure, all scaling to be done at a mill which the other covenanted to erect on the land. The owners covenanted that they would permit the other to enter on the premises for the purpose of erecting a mill and doing anything necessary during the time allowed to cut and saw the timber. It was provided that no less than a certain amount of lumber should be cut each year, and that it should all be removed within ten years, but that the time might be extended for an additional five years. *Held,* that the contract was not a sale of the saw timber, but a license to erect a mill and manufacture lumber from the saw timber; and hence it was a violation of the agreement for the licensee to remove timber for telegraph poles, though they were scaled at the mill.

From Multnomah: JOHN B. CLELAND, Judge.

Suit by Mary Elliott and others against Clarence R. Bloyd and another. From a decree in favor of plaintiffs, defendants appeal.　　AFFIRMED.

For appellants there was an oral argument by *Mr. Geo. C. Stout,* with a brief over the name of *Stott & Stout,* to this effect:

The defendants being separate owners of the land where the timber was being cut, cannot join as plaintiffs in a suit to restrain defendants from cutting timber on their lands: *City of Portland* v. *Paulsen,* 16 Or. 450 (1 L. R. A. 673, 19 Pac. 450); *Woolstein* v. *Welch,* 42 Fed. 566; *Fogg* v. *Nevada Ry. Co.* 20 Nev. 429 (23 Pac. 840); *Hinchman* v. *Railroad Co.* 17 N. J. Eq. 75 (86 Am. Dec. 252); *Yate* v. *Railroad Co.* 10 Ind. 174; *Railroad* v. *Prudden,* 20 N. J. Eq. 539; *Demanst* v. *Hardham,* 34 N. J. Eq. 472.

Where it appears from the evidence at the trial that plaintiffs have been improperly joined a court of equity will not grant an injunction: High, Inj. (3 ed.), §§ 1563 and 1613; *Moore* v. *Hill,* 59 Ga. 760; 10 Am. & Eng. Ency. Law, 796.

The court has no jurisdiction of this cause because there is no allegation in the complaint that the defendants are insolvent, and it appears both from the complaint and the proof that the value of the timber being cut can be ascertained: *Heaney* v. *Butte & Mont. Com. Co.* 10 Mont. 590 (27 Pac.

379); *Ewing* v. *O'Rourke,* 14 Or. 514 (13 Pac. 483); *Parsons* v. *Hartman,* 25 Or. 547 (30 L. R. A. 98, 42 Am. St. Rep. 803, 37 Pac. 61); *California Nav. & Imp. Co.* v. *Union Transp. Co.* 122 Cal. 641 (55 Pac. 591).

For respondents there was an oral argument by *Mr. Austin F. Flegel,* with a brief over the names of *Thomas H. Ward,* and *Mr. Flegel,* to this effect:

*First.* The court has jurisdiction to hear and determine this suit: *Sheridan* v. *McMullen,* 12 Or. 150 (6 Pac. 497); *Ewing* v. *O'Rourke,* 14 Or. 514 (13 Pac. 483); *Mendenhall* v. *Water Co.* 27 Or. 38 (39 Pac. 399); *Norton* v. *Elwert,* 29 Or. 583 (41 Pac. 926); *Bishop* v. *Baisley,* 28 Or. 119 (41 Pac. 937); *Natoma W. & M. Co.* v. *Clarken,* 14 Cal. 544; *Hecks* v. *Michael,* 15 Cal. 115; *Spear* v. *Cutter,* 5 Barb. 486; *Hawley* v. *Clawes,* 2 John. Ch. 121; *Kane* v. *Vanderburgh,* 1 John. Ch. 20; *Watson* v. *Hunter & McClay,* 5 John. Ch. 168 (9 Am. Dec. 295); *Peak* v. *Hayden,* 3 Bush, 125; *Markham* v. *Howell,* 33 Ga. 508; *Duncombe* v. *Felt,* 81 Mich. 332; Pomeroy, Eq. Jur. (2 ed.), vol. III, § 1348.

*Second.* The cutting of timber is waste: 28 Am. & Eng. Ency. of Law, 870; *Natoma W. & M. Co.* v. *Clarken,* 14 Cal. 544; *Hecks* v. *Michael,* 15 Cal. 115; *Spear* v. *Cutter,* 5 Barb. 486; *Peak* v. *Hayden,* 3 Bush, 125; *Sheridan* v. *McMullen,* 12 Or. 150 (6 Pac. 497).

MR. JUSTICE WOLVERTON delivered the opinion.

On October 20, 1896, Mary Elliott and Samuel Elliott, her husband, and W. C. Elliott, as parties of the first part, entered into an agreement with the defendant Clarence R. Bloyd, as party of the second part, of tenor following: "That the said parties of the first part, for and in consideration of the agreements herein promised to be done and performed by the party of the second part, hereby bargain, sell, and convey to said party of the second part all the saw timber on the following described premises,   *   *   *   for the agreed price of twenty-five cents per thousand, board measure, for any and all kinds of

timber except maple, for which the price shall be fifty cents per thousand. The logs to be scaled at the mill, and accounts of said scaling to be delivered by party of the second part to the parties of the first part, on demand, as often and at the end of each year from and after starting the mill hereinafter mentioned. Party of the second part to erect and put in operation a good and sufficient sawmill, with the necessary fixtures, and running by steam power of thirty horse power at least; parties of the first part also agreeing and binding themselves, their heirs and assigns, to allow said party of the second part free and absolute use, without charge, of ten acres, described as follows: * * * for a mill site on which to place sawmill, yards, and such buildings and improvements as party of the second part may wish. Parties of the first part also covenant and agree with party of the second part that they have a good right to sell and convey all of such timber as aforesaid, and that upon the execution of this agreement they will permit said party of the second part, or any one acting under his direction, to enter upon said premises for the purpose of erecting said mill and putting the same in running order, and to supply the same with logs cut on said premises, and to do any other acts necessary and proper with a sawmill and lumber business, during the full time in which the party of the second part is allowed to cut and saw said timber and dispose of the lumber cut at said sawmill; provided, that party of the second part shall cut and manufacture said timber within ten years; provided, that if party of the second part so desires, time may be extended for a period of five years longer from the termination of said ten years; and provided further, that the party of the second part shall not be required to use or pay for timber that is not merchantable. And party of the second part agrees and binds himself to erect, within twelve months from this date, and operate, a steam sawmill upon said premises, of a capacity of thirty horse power at least, and to render an account of the logs scaled at the end of each and every year after said sawmill shall have been put in operation, if demanded by parties of the first part, or their assigns, and will pay, within

one month after said account shall have been rendered, as aforesaid, for all of such scale, at the rate of twenty-five cents per thousand for yellow and red fir and cedar, and fifty cents per thousand for maple lumber. \* \* \* Party of the second part agrees to cut at least one hundred thousand feet for each and every year, and pay therefor in United States gold coin, or its equivalent; also to leave all the buildings, except the sawmill, on the premises, after the expiration of this agreement.'' At the time of its execution Mary Elliott was the owner of one hundred and sixty acres and W. C. Elliott eighty acres of the land described therein. Some time in August, and at the time of the filing of the complaint herein, Bloyd and defendant Reed were engaged in cutting timber on said land for telegraph poles and shipping them away. This suit was instituted to restrain the further disposition of the timber in that manner, and for damages for waste suffered. The plaintiffs prevailed in the trial court, and the defendants appeal.

1. Preliminarily, it is urged that a suit will not lie to restrain the defendants from committing waste, and that plaintiffs, not being joint owners of the land involved by the agreement, could not join in the complaint, and for either cause the suit should be dismissed. There being a privity of estate between the plaintiffs and defendant Bloyd and Reed, acting at the latter's instance, a suit will lie, under the settled rules of equitable jurisdiction, to restrain the threatened waste: *Bishop* v. *Baisley*, 28 Or. 119 (41 Pac. 936); *Sheridan* v. *McMullen*, 12 Or. 150 (6 Pac. 497).

2. As to the other proposition, the contract or agreement upon which the suit is based is with the owners of the land jointly, and, having treated with the plaintiffs as jointly concerned in the timber, the defendants are not in a position to insist that the complaint is multifarious, and thereby require the plaintiffs to prosecute separate suits.

3. The cardinal question in the case is a matter of construction of the contract. By the first clause it would seem to evidence a bargain and sale of all the saw timber upon the premises at the price of twenty-five cents per one thousand feet,

board measure, for all timber except maple, and for that fifty cents per one thousand. By another clause plaintiffs covenant that they have good right to sell and convey all such timber, which is in accord with the idea of a sale. But when we come to the other features of the agreement we are led to conclude that an absolute sale of the timber was not intended. Bloyd agrees and binds himself to erect a thirty horse power steam sawmill upon the premises within twelve months; to operate the same, and cut at least one hundred thousand feet of lumber every year; and pay therefor in United States gold coin, or its equivalent. This gives proper connection to another covenant of plaintiffs with three conditions subjoined, denominated "provisos." These are, in effect, that they will permit Bloyd, or any one acting under his direction, to enter upon the premises for the purpose of erecting the mill and putting the same into operation, "and to supply the same with logs cut on said premises, and to do any acts necessary and proper with a sawmill and lumber business during the full time" he "is allowed to cut and saw said timber and dispose of the lumber cut at said sawmill;" provided, he shall cut and manufacture said timber within ten years, or, if he so desire, the time may be extended for an additional period of five years, he not being required to use or pay for timber not merchantable. Now, when construed by its four corners, looking through the whole instrument, as we are bound to do under well-established rules of construction, it is manifest that this is not a stumpage contract, or bargain and sale of the timber mentioned upon these premises, but a permit or license, simply, for the defendant Bloyd to erect a mill thereon, and manufacture lumber from the saw timber in amount not less than one hundred thousand feet per annum, and dispose of such lumber. The latter covenant of the plaintiffs shows the permit, which, along with the conditions imposed for cutting and manufacturing the timber within ten or fifteen years, and the other terms and conditions of the agreement relating to the mill, and the amount of lumber required to be manufactured annually, control and characterize the real nature of the agreement.

They are so repugnant to the idea of a bargain and sale of the saw timber to be cut within the time designated as to dispel it. While some of the language used is apt for a bargain and sale, yet, when construed in connection with the various covenants and agreements of the parties, the real purpose is apparent to grant a permit or license only, and that purpose must prevail. In this view it was a violation of the agreement for Bloyd to attempt to cut and remove timber from the premises for telegraph poles, and it made no difference that they were scaled at the mill. They were not manufactured into lumber, and disposed of as such, but by the lineal foot, as timber of the kind is bought and sold in the market. Other than this, the meaning of the term "saw timber," as used by the parties in formulating the agreement, is not a matter of controversy.

The decree of the trial court will therefore be affirmed.

AFFIRMED.