Argued September 26; affirmed October 17, 1944

REID *v.* KIER ET AL.

(152 P. (2d) 417)

Before BAILEY, Chief Justice, and ROSSMAN, KELLY, LUSK and BRAND, Associate Justices.

*J. F. Boothe,* of Portland, for appellant.

*W. C. Winslow,* of Salem, for respondents.

KELLY, J.   On May 29, 1939, the parties hereto entered into a written agreement, wherein plaintiff is

termed the first party and defendants are designated as the second party, and by virtue of which contract plaintiff agreed to sell and defendants agreed to purchase timber on the northwest quarter of section 16 in township 7 south of range 6 west in Polk County, Oregon, for a consideration of $7,500.00.

The contract contains a provision with reference to the creation by defendants of a sinking fund derived from the proceeds of the sale of timber to be removed by defendants from another tract designated as the "Ralph Williams ownership". This provision of the contract is not involved here further than to disclose the source of payments made to plaintiff by defendants of twenty-five cents per thousand feet of timber taken from said "Ralph Williams ownership".

By said contract, defendants agreed to pay plaintiff $2.00 per thousand log scale on all logs and one cent per lineal foot for all piling removed from said premises and that said sum should be remitted to the United States National Bank at Portland, Oregon, for credit to plaintiff to apply upon said purchase price not later than the tenth of each month for the previous month's log and piling removal, and that such remittance should continue until the entire purchase price had been paid in full.

By the terms of paragraph four of said contract, termed section 4 thereof in defendants' answer, defendants also agreed that all of the logs purchased by them from said northwest quarter of section 16 should be sold to buyers with good credit rating and that defendants would supply plaintiff with a certified copy of scale of each month's delivery at the time of each remittance.

The concluding six paragraphs of said agreement are as follows:

■ It is agreed that first party, by the sale to second party of the timber conveyed by this sales contract, does not in any way guarantee the quality or cruise of said timber, and that the consideration of Seventy Five Hundred Dollars ($7500.00), as named herein, is for said timber as is.

■ It is further agreed by second party that time of payment and strict performance of this agreement are the essence of this agreement and that the failure of second party to comply with the same will at the option of first party make any unpaid balance of purchase price as may at such time exist, become due and payable, and also that they will not later than December 31, 1942, pay in full said purchase price regardless of whether said timber has been removed by them or not, providing however, if such delinquency shall exist as the result of causes over which second party has no control, that an extension of final payment shall be granted for the period of such delay, providing it shall not exceed six months as a whole.

■ It is agreed by second party that first party or her representative shall, at all times during the performance of this agreement, have the right to audit all or such part of the log and piling sales footage as she may elect, in order that she may verify such reports as second party may make in compliance with the terms of this purchase agreement.

■ It is understood by second party that they will not assign, transfer or hypothecate this contract without the written consent of the first party.

■ Second party further agrees that they will pay all state and county taxes now assessed against the timber only on this property that will be due and payable after June 15, 1939, with the understanding that first party will pay all taxes that

have been assessed and are unpaid up to and including June 15, 1939. Second party further agrees that all taxes that may hereafter be assessed on said timber will be paid by them until they have removed all timber from said described land.

It is understood that partial payments made by the second party shall not be construed as a waiver of the time of payments, terms and conditions as the essence of this agreement, and furthermore, the terms of this agreement cannot be changed unless in writing signed by the parties hereto."

On July 26, 1943, plaintiff filed her complaint here to recover the unpaid balance of the purchase price of said timber alleged by plaintiff to be $3,064.26 and taxes thereon in the sum of $246.34.

On August 14, 1943, an order was made adding Kenwood Lumber Company, a corporation, and J. D. and W. W. Harvey as additional defendants. Before trial, this order was rescinded and set aside.

Only defendant Brown answered plaintiff's complaint. The record does not disclose how the case was disposed of with respect to defendant Kier. In his answer defendant Brown admits the execution of said contract, alleges that shortly after the execution thereof he took over the whole interest comprising the subject matter of said contract.

Paragraphs II, V and VI of said defendant's answer are not denied, and are as follows:

"II

That defendants J. D. Harvey and W. W. Harvey were the chief stockholders and operators of the Kenwood Lumber Company, hereinafter more particularly referred to."

"V

That shortly after the execution of the contract this defendant entered upon the performance of

said contract and, in order to obviate any difficulty with plaintiff over the provision of section four of said contract, made the following working arrangement with plaintiff, namely, that he would sell logs to different mills and buyers and that said mills and buyers would deduct from the purchase price which they would agree to pay to this defendant the sum of $2 per thousand and remit and pay the same directly to the plaintiff by paying the same, pursuant to the terms of said contract, to the U. S. National Bank at Portland, Oregon. That during the entire performance of said contract said arrangement has been carried out and said remittances and copies of scales have been furnished by said purchasers of said logs, except as hereinafter specifically referred to.

## VI

That under and pursuant to said contract and said arrangement for logging above set forth, there has been paid by said buyers of said logs to plaintiff the following sums: Minden, $258.43; Realty Service Corporation, $98.50; Burns, $2,258.81; Kenwood Lumber Company, $1,820; or a total of $4,435.74.''

Except with respect to the amount defendants were obligated to pay as taxes upon said timber, the issues herein are tendered in the concluding seven allegations of fact set forth in defendant's further and separate answer, which are as follows:

## ''VII

That in the spring of 1942 Kenwood Lumber Company sold its mill and all its operations to F. D. McCormack and W. R. Harrison. That just prior to making said sale defendant Brown had been delivering logs to the said Kenwood Lumber Company under the arrangement above referred to, by the terms of which the Kenwood Lumber Company deducted from the purchase price of the logs $2 a

thousand for the purpose of remitting the same to plaintiff, but that the said Kenwood Lumber Company did not remit said moneys in full to plaintiff but said Kenwood Lumber Company did remit to plaintiff during said operation the sum of $1,820, referred to herein. That during said time said Kenwood Lumber Company deducted from the purchase price of the logs furnished by this defendant to Kenwood Lumber Company the sum of $2,937.07 and withheld the sum of $1,117.07.

## VIII

That at the time said Kenwood Lumber Company sold said mill and its operations to McCormack and Harrison it was required of said Kenwood Lumber Company and the defendants Harvey that they furnish to McCormack and Harrison statements showing all outstanding obligations and bills paid.

## IX

That in order to furnish evidence to the said McCormack and Harrison that the obligation to plaintiff herein had been fully met, Kenwood Lumber Company obtained from plaintiff a release, in words and figures as follows, to-wit:

'Received from Kenwood Lumber Company and C. D. Christenson the sum of $380.00 in full payment, settlement and satisfaction of any and all claims against the Kenwood Lumber Company, J. D. Harvey and W. W. Harvey for timber purchased in connection with the operation of the Kenwood Lumber Mill near Dallas, Polk County, Oregon. This is intended as a full and complete settlement, satisfaction and discharge of any and all claims or demands against the said above named parties.

Etta Reid
By Wilbur P. Reid,
power of attorney for
Mrs. Reid.''

## X

That this defendant had no knowledge of the fact that the said Kenwood Lumber Company had not made the remittances to plaintiff herein covering all amounts deducted from the purchase price of the logs. That this defendant had no knowledge of the obtaining of the release by the Kenwood Lumber Company from plaintiff. That had plaintiff not furnished and signed said release, it would have been necessary for the Kenwood Lumber Company and/or defendants Harvey to pay the additional amount of $1,117.07 before said sale could have been made to the said McCormack and Harrison.

## XI

That since said sale said corporation, Kenwood Lumber Company, has discontinued business, and the assets thereof have been taken over by defendants Harvey. That the financial responsibility of the said defendants Harvey is questionable.

## XII

That this defendant is ready, able and willing to pay the balance due upon said contract referred to in plaintiff's complaint, but insists upon a credit being given for the sum of $1,117.07, which credit plaintiff refuses to give.

## XIII

That this defendant alleges that plaintiff herein ought to be and is estopped from taking the position that said credit of $1,117.07 should not be given on said contract, for the reasons herein set forth and alleged.''

Paragraph XIV of defendant's further and separate answer is to the effect that defendant has no plain, adequate and complete remedy at law.

In her reply, plaintiff denies any knowledge or information sufficient to form a belief as to the matters set forth in paragraphs IV, VIII and XI of defendant's further and separate answer and absolutely

denies the allegations contained in paragraphs XII, XIII and XIV of said further and separate answer.

Paragraphs II and IV of plaintiff's reply are as follows:

"II

"Replying to paragraph VII. the plaintiff admits that prior to the alleged sale by Kenwood Lumber Company to McCormack and Harrison, the defendant, Brown had been delivering logs to said Kenwood Lumber Company under the arrangements referred to, by the terms of which the Kenwood Lumber Company deducted from the purchase price, of the logs $2, per thousand for the purpose of remitting the same to plaintiff; that said Kenwood Lumber Company remitted to plaintiff during said operation the sum of $1820, but denies any knowledge or information sufficient to form a belief as to all the other matters set forth in said paragraph."

"IV

Replying to paragraph IX. the plaintiff admits the execution of the release to the Kenwood Lumber Company, as therein set forth, but denies each and every other allegation contained in said paragraph, and avers that on November 24, 1941, the Kenwood Lumber Company furnished plaintiff a copy of the scale showing that it had purchased from the defendant, Brown 910 thousand feet of logs taken from plaintiff's land pursuant to said contract, and that the amount due to plaintiff therefor at $2. per thousand, log scale, amounted to $1820. That said Kenwood Lumber Company then paid to plaintiff on account thereof, the sum of $1400, and agreed to pay the remaining $420 within 90 days.

That said Kenwood Lumber Company did not pay said balance within 90 days, but on October 17, 1942, it paid plaintiff $380 which plaintiff accepted as and for the said balance of $420, at which time

plaintiff executed said release as full payment for all logs so purchased by said Kenwood Lumber Company under said contract, and as shown by the log scale furnished by said purchaser.''

The trial court held that the complaint discloses this to be an action at law, but construed defendant's further and separate answer as alleging facts requiring equitable relief; and hence, tried the case as an equitable proceeding.

Plaintiff contends that the court erred in trying it as a suit in equity.

Defendant contends that defendant's answer presents a cause of suit for specific performance of an executory contract for the sale of real property and therefore the case is one of equitable cognizance.

In *Thorp v. Rutherford,* 150 Or. 157, 43 P. (2d) 907, it is stated that—

"The consensus of opinion would seem to be that where the covenant to pay and the covenant to convey are independent then an action at law may be instituted for the purchase money, but where the covenants are dependent, or to be concurrently performed, then the weight of authority seems to be that no action at law will lie for the purchase money; that the vendor's remedy is by suit for specific performance, that is if he wishes to recover the purchase money.'' Ibid, p. 166.

Speaking through Mr. Chief Justice Powers, the Supreme Court of Vermont said:

"It is quite apparent that the writing of October 12, 1922, was wholly insufficient to convey the title to the standing timber. It operated only as a license to enter to cut and remove the same, and the title passed to Hewitt'' [the purchaser]'' or his assignee as fast as timber was cut, but no faster.

Cady v. Sanford, 53 Vt. 632, 636; Ross v. Hamilton, 95 Vt. 234, 236, 113 A. 781. Such is the result at law. But in equity, the parties stand in an entirely different situation. Equity regards that as done which ought to be done. It is said that this is equity's favorite maxim. Coman v. Lakey, 80 N. Y. 345, 350; Miller v. Cramer, 48 S. C. 282, 26 S. E. 657; Johnson v. Brill, (Mo. Sup.) 295 S. W. 558, 562.

"However this may be, it is certain that it is one of the foundation stones upon which the whole structure of chancery is erected. It pervades the entire field of that jurisdiction, and, according to Mr. Pomeroy, its significance is nowhere more clearly disclosed than in its treatment of executory contracts for the sale of land or an interest therein. At law, the relations thereunder of vendor and purchaser are wholly personal, and give rise to actions for damages, only. But in equity, the contract is regarded as executed, and as operating to transfer the estate from vendor to vendee, just according to the intention of the parties. The vendee is treated as the owner to the extent required by the contract, though the legal title remains in the vendor. The latter is treated as one holding the title in trust and for security, only. This is so firmly established that an extensive collection of authorities is not required. The following may be referred to: 1 Pom. Eq. § 368; *2 R. C. L. 464, and cases; Rienzo v. Cohen, 112 Conn. 427, 152 A. 394, 396; Calrider v. Caples, 160 Md. 392, 153 A. 445, 447.

* This should be 27 R. C. L. 464 instead of 2 R. C. L.

"Our own court has recognized and applied this doctrine in similar cases. Wilkins v. Somerville, 80 Vt. 48, 53, 66 Atl. 893, 11 L. R. A. (N. S.) 1183, 130 A. S. R. 906; Baker v. Rushford, 91 Vt. 495, 497, 101 A. 769." *Dutton v. Davis,* et al, 103 Vt. 450, 156 Atl. 531, 532.

In his oral argument counsel for plaintiff cited Section 71-176, Vol. 5, O. C. L. A. pp. 381-382, (Section 76,

Uniform Sales Act), calling attention particularly to the following clause in subdivision 1 of said section:

"'Goods' include all chattels personal other than things in action and money. The term includes emblements, industrial growing crops, and things attached to or forming part of the land which are agreed to be severed before sale or under the contract of sale."

Based upon the last sentence, above quoted, plaintiff argues that the timber in suit must be regarded as personal property. Plaintiff's insistence that this cause should have been tried as an action at law and her counsel's dependence upon the foregoing statutory provision as supporting that contention require an expression of our views thereupon.

■ The purpose of the Uniform Sales Act was to establish uniformity of usages and customs in trading throughout the United States. Vol. 1, Uniform Laws Annotated, p. 5, citing *Dolan Mercantile Co. v. Marcus,* 276 Pa. St. 404, 120 Atl. 396; *Sheffield-King Milling Co. v. Domestic Science Baking Co.,* 95 Ohio St. 180, 115 N. E. 1014; *International Milling Co. v. North Platte Flour Mills, Inc.,* 119 Neb. 325, 229 N. W. 22; *Rinaldi v. Mohican Co.* 225 N. Y. 70, 121 N. E. 471.

The original source of the Uniform Sales Act was the English Sale of Goods Act adopted in 1893. Ibid, citing *International Milling Co. v. North Platte Flour Mills, Inc.,* supra, and *Rosenburg v. F. S. Buffum Co.,* 199 App. Div. (N. Y.) 482, 191 N. Y. S. 788. Prior to the enactment of the English act, the law of England relating to the question under discussion was expressed in the case of *Marshall v. Green,* 1 C. P. D. 35. *Fredkin v. Glines,* 18 Manitoba Law Reports 249.

In *Marshall v. Green*, supra, it was held that a sale of growing trees to be taken away as soon as possible by the purchaser was not a contract for sale of an interest in land.

The definition of the word "goods" in the English act and in the Manitoba act is the same as that hereinabove quoted from the statute of Oregon. It is stated by the Court of Appeal of Manitoba in *Fredkin v. Glines*, supra, that—

"By this definition we are to consider as goods things attached to, or forming part of, the land which are agreed to be severed under the contract of sale. * * * If, therefore, growing trees, or natural grass, be sold for the purpose of being cut and taken away, pursuant to the contract, they are goods under this definition. There does not appear to be any limit of time imposed by the statute within which the intended severance is to take place."

In Wisconsin, the Uniform Sales Act was enacted in 1911 (Laws, 1911, Chap. 549) and became effective there on January 1, 1912. On February 8, 1921, the supreme court of that state decided a case involving a written contract executed on December 18, 1916, for the sale of standing timber to be removed before a specified date unless the vendor continued to own the farm during the following winter in which case the vendor could remove the timber at such time. On May 29, 1917, the vendor conveyed the land to defendant Heise. The jury found that on April 2, 1917, vendor orally agreed to allow purchaser to cut and remove during the winter of 1917-1918, the balance of the timber uncut. The Wisconsin court held that a contract for the sale of standing timber relates to an interest in land and that the oral contract for removal of

the uncut timber during the winter of 1917-1918 was void. *Schaap v. Wolf*, 173 Wis. 351, 181 N. W. 214, 17 A. L. R. 7. The Uniform Sales Act is not discussed by the Wisconsin court.

The Uniform Sales Act became effective in Oregon on February 22, 1919. On July 19, 1909, a decision was rendered in the United States District Court of Oregon, involving the question whether the sale of standing timber is a conveyance of an interest in real property or a transfer of personal property. The opinion was rendered by the late Mr. Justice Wolverton, a former member of this court. We quote therefrom:

> "Incidentally, the question has been presented whether the right to cut and remove standing timber is an interest in land which must be transferred by deed. In regard to the question, 'it is now very generally recognized,' say the authors of the American & English Encyclopedia of Law (Volume 28, p. 541), 'that a contract for the sale of trees, if the vendee is to have the right to the soil for a time for the purpose of further growth and profit, is a contract for an interest of land, but that where the trees are sold in the prospect of separation from the soil immediately or within a reasonable time, without any stipulation for the beneficial use of the soil, but with license to enter and take them away, it is regarded as a sale of goods only, and not within the fourth section of the statute.' " *Goodnough Mercantile & Stock Co. v. Galloway*, 171 Fed. 940, 951.

On the other hand, in the United States Circuit Court of Appeals for the Ninth Circuit on March 25, 1929, certain contracts, executed during the years 1921 to 1924, were under consideration. These contracts were evidence of twenty-six sales of standing timber on lands in the state of Washington and twenty-four

sales of standing timber on lands in the state of Idaho. By the terms of each of these contracts the purchasers were given the right to enter and remove the timber at any time before April 1, 1934. The appellant failed to affix revenue stamps to any of said contracts or to pay a tax on any of said sales. The Commissioner of Internal Revenue assessed a special tax against appellant which was paid under protest and appellant thereafter filed a claim for a refund thereof which claim was rejected on the ground that the contracts were taxable as conveyances of real estate. The appellant instituted the action to recover the sum so paid. From a judgment for defendant, appellant appealed.

In the United States Circuit Court of Appeals, the opinion was rendered by Judge Gilbert.

In the state of Idaho, the Uniform Sales Act was passed in 1919 and became effective on January 1, 1920.

In his opinion, Judge Gilbert discusses the opinion of the Supreme Court of Washington in the case of *France v. Deep River Logging Co.*, 79 Wash. 336, 140 P. 361, Ann. Cas. 1916A, 238. We quote from Judge Gilbert's opinion as follows:

"The decision (in France v. Deep River Logging Co., supra) did not meet the precise question which is now before this court, but in the course of the opinion that court used language which the majority of the members of this court take as the expression of its view upon the subject when it said: 'It may now be regarded as the settled law of this state, in harmony with the decided weight of authority elsewhere, that conveyance of standing timber, with the right of entry upon the land and removal of the timber therefrom in the future, whether the time of removal be measured by stated or reasonable time, is within our statute requiring conveyances of

real estate or any interest therein to be by deed."
*Milwaukee Land Co. v. Poe,* 31 Fed. (2d) 733.

Thus it appears that under the law of England before the enactment of the English Sale of Goods Act in 1893, in case the trees were to be taken away as soon as possible, they were deemed to be personal property.

The Manitoba court construes the English Sale of Goods Act as limiting its designation of standing timber as goods to those cases where pursuant to the contract the trees are to be cut and taken away.

The Wisconsin court seems to hold that the Uniform Sales Act is not applicable to standing timber for it is indeed inconceivable that such an erudite, able and highly esteemed court were not entirely familiar with the provisions of such act.

In considering the law as it was before the enactment of the Uniform Sales Act, Judge Wolverton approved the doctrine, that if the trees are sold in prospect of separation from the soil immediately or within a reasonable time a sale thereof is to be regarded as of goods only.

Speaking through Judge Gilbert, the United States Circuit Court of Appeals for the Ninth District, in considering the contracts for the sale of the Idaho timber, assumed the same position as that of the Wisconsin court.

In a word, under the construction of the Uniform Sales Act most favorable to plaintiff, standing timber is deemed to be goods when and only when it is agreed to be severed before sale or under the contract of sale. As to the standing timber in suit, there is no agreement that it is to be severed before sale or at all.

The contract in suit does not require the removal at any stated time, or at all, of the timber sold.

License to enter upon the premises is granted defendants for that purpose, but there is no covenant or agreement that defendants will sever the timber at any particular time or at all.

Paragraph three of said contract grants a license to enter without limiting the time therefor. Said paragraph is as follows:

First party agrees that second party may at any time hereafter enter into and upon said described land for the construction of logging roads and removal of the timber thereon, with the understanding that Second party will pay to the First party Two Dollars ($2.00) per thousand log scale on all logs and one (1c) per lineal foot for all piling removed therefrom, which sum shall be remitted not later than the 10th of each month for the previous month's log and piling removal to the U. S. National Bank at Portland, Oregon, for credit to the first party to apply upon said purchase price, and that such remittances will continue until the entire purchase price has been paid in full including the twenty five cents (25c) per thousand sinking fund payments, as hereinbefore provided for.''

It follows that the quoted provision of the Uniform Sales Act does not apply to the contract in suit in so far as the subject matter of this cause is concerned and hence it was proper to try this case as an equitable proceeding, and upon appeal we should try it de novo.

As we understand the record, there were 1,468,536 feet of logs derived from timber on plaintiff's land and delivered in 1941 by defendant to the Kenwood Lumber Company. At $2.00 per thousand, this would amount to $2,937.07. No issue arises upon deliveries made by defendant to other mills.

The above mentioned deliveries to the Kenwood Lumber Company are evidenced by nine written statements which were attached to the respective checks sent to defendant by the Kenwood Lumber Company in payment of the amounts due to defendant after withholding $2.00 per thousand to be placed in the bank to plaintiff's credit in accordance with the working arrangements stated in paragraph V of defendant's further and separate answer and counterclaim. In evidence there are ten such written statements, but the one marked "Defendants Ex. 10" refers to deliveries during the first half of May, which are included in Defendants Exhibit 4 covering all of the deliveries in May.

The following synopsis reflects the respective exhibit numbers, the months in which the deliveries were made and the respective amounts delivered:

| Defendant's Exhibit Number | Date of Delivery | Feet |
|---|---|---|
| 4 | May | 185,115 |
| 3 | June 1 to 15 | 156,927 |
| 9 | June 16 to 31 | 121,904 |
| 8 | July 1 to 15 | 157,335 |
| 7 | July 16 to 31 | 251,539 |
| 6 | August 1 to 15 | 177,378 |
| 5 | August 16 to 31 | 136,019 |
| 2 | [No date given] | 101,491 |
| 1 | September 16 to 30 | 180,828 |
| | | 1,468,536 |

The principal issue in this case is presented because the amount of money the Kenwood Lumber Company placed to the credit of the plaintiff under the working arrangements aforesaid is $1,820 instead of $2,937.07.

To solve the question involved in this issue, we are confronted not only with the question as to the amount which the Kenwood Lumber Company should have paid to plaintiff, which, as stated, is the sum of $2,937.07, but we must determine the legal effect of the working arrangements aforesaid.

■ By this supplemental agreement between plaintiff and defendant, plaintiff became a creditor beneficiary, the Kenwood Lumber Company being the promisor and defendant being the promisee.

"Third persons beneficiaries under a contract, although not parties to it may be divided into three classes; * * *: (2) such person is a creditor beneficiary if no intention to make a gift appears from the terms of the promise, and performance of the promise will satisfy an actual (or supposed) or asserted duty of the promisee to the beneficiary." Vol. 2, Williston on Contracts, pp. 1041-1042, sec. 356, quoting *Hendrix Mill Etc. Co. v. Meador,* 228 Ky. 844, 16 S. W. (2d) 482, 483; *Haines v. Pacific Bancorporation,* 146 Or. 407, 30 P. (2d) 763, and authorities there cited; Restatement, Contracts, Sec. 133.

■ A creditor beneficiary may maintain an action directly against the promisor upon the promise made by the promisor to the promisee. *Phez Co. v. Salem Fruit Union,* 103 Or. 514, 201 P. 222, 205 P. 970, 25 A. L. R. 1090, 1103; *Sandgren v. Cain Lumber Co.,* 125 Or. 375, 264 P. 865; *The Umpqua Valley Bank v. Wilson,* 120 Or. 396, 252 P. 563; *Davidson v. Madden,* 89 Or. 209, 173 P. 320.

"The weight of authority however, in the jurisdictions which allow a creditor beneficiary a direct right against the promisor supports the conclusion that the creditor has rights against both the promisor and promisee, not merely a choice of rights;

being entitled, of course, to but a single satisfaction." Vol. 2, Williston on Contracts, Rev. Ed. pp. 1134, 1135, section 393, and authorities cited in note 3, including *Feldman v. McGuire*, 34 Or. 309, 313, 55 P. 872; *Erickson v. Grand Ronde Lumber Co.*, 162 Or. 556, at 586, 92 P. (2d) 170, 94 P. (2d) 139.

■ Thus it follows that the Kenwood Lumber Company and defendants were both liable to plaintiff for the unpaid amount withheld by the Kenwood Lumber Company from the purchase price of the logs delivered to it by defendant.

On October 17, 1942, plaintiff executed the following release:

"Received from Kenwood Lumber Company and C. D. Christenson the sum of $380.00 in full payment, settlement and satisfaction of any and all claims against the Kenwood Lumber Company, J. D. Harvey and W. W. Harvey for timber purchased in connection with the operation of the Kenwood Lumber Mill near Dallas, Polk County, Oregon. This is intended as a full and complete settlement, satisfaction and discharge of any and all claims or demands against the said above named parties.

> Etta Reid
> By Wilbur P. Reid,
> power of attorney for
> Mrs. Reid."

■ The following is an excerpt from the opinion of Mr. Justice Rossman on the petition for rehearing in *Erickson v. Grand Ronde Lumber Company*, supra:

"From Restatement of the Law, Contracts, § 141, we quote:

'(1) A creditor beneficiary who has an enforceable claim against the promisee can get judgment

against either the promisee or the promisor or against each of them on their respective duties to him. Satisfaction in whole or in part of either of these duties, or of judgments thereon, satisfies to that extent the other duty or judgment.'

The principle embraced in the Restatement represents the law of this state. From the carefully prepared annotations to § 141, subd. 1, of the Restatement of the Law of Contracts prepared by Professor Charles G. Howard (12 Oregon Law Review 283) we quote:

'Oregon cases are in accord with this section and hold uniformly that there can be but one satisfaction, though both promisor and promisee are liable. Strong v. Kamm & Brown, 13 Or. 172, 9 Pac. 331 (1886); Feldman v. McGuire, 34 Or. 309, 55 Pac. 872 (1889); Miles v. Bowers, 49 Or. 429, 90 Pac. 905 (1907); The Home v. Selling, 91 Or. 428, 179 Pac. 261 (1919).'

We have read the decisions cited by Professor Howard and are satisfied that he correctly stated their essence." Ibid, p. 586.

■ The effect of the satisfaction of the claim against the promisor, namely, the Kenwood Lumber Company, is to discharge the promisee, defendant, from any and all liability by reason of the delivery by defendant to the Kenwood Lumber Company of the logs in suit and the withholding of $2.00 per thousand of the purchase price by that company.

Under the working arrangements by the terms of which plaintiff became a creditor beneficiary, the Kenwood Lumber Company, the promisor and defendant the promisee, no cooperation by plaintiff was necessary in order to enable the Kenwood Lumber Company to fulfill its promise to defendant by depositing to the credit of plaintiff the $2.00 per thousand

feet of logs delivered by defendant to the Kenwood Lumber Company. The failure, therefore, on the part of the Kenwood Lumber Company to comply with their promise to defendant would have given defendant the right to sue the Kenwood Lumber Company. Vol. 1, Restatement, Contract, § 137, Comment a.

■ The discharge and acquittance of the Kenwood Lumber Company by plaintiff enables that company to dispose of its mill property which has wrought a material change in the relation of that company to defendant to the prejudice of defendant's ability to recover from the Kenwood Lumber Company, because of its failure to comply with its promise. Because this change was rendered possible by the acquittance mentioned, clearly plaintiff ought not now to be heard to say that there was no such acquittance and discharge but merely a compromise settlement of a comparatively small claim.

Deducting the admitted payments in the sum of ............................................................................ $4,435.74
and the amount withheld by the Kenwood Lumber Company, ................................................ 1,117.07

totaling, .......................................................................... $5,552.81
from the agreed price of $7,500.00, we have the sum of .................................................................. $1,947.19
as the unpaid balance of said purchase price.

The decree of the trial court is modified to the effect that plaintiff have and recover of and from defendant, Harvey C. Brown, the sum of $1,947.19 together with interest thereon at the rate of six per cent per annum from the 31st day of December, 1942,

until paid together with the sum of $177.03 as one-half of the taxes on said property in accordance with the stipulation of the parties.

Except as thus modified the decree of the circuit court is affirmed and it is ordered that plaintiff recover costs and disbursements on appeal.