OREGON LUMBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31860. Promulgated April 27, 1953.

*Clair M. Senior, Esq.*, for the petitioner.
*John H. Pigg, Esq.*, for the respondent.

OPINION.

JOHNSON, *Judge:* Respondent has determined deficiencies in income and excess profits tax as follows:

| Year | Kind of tax | Deficiency |
|------|-------------|-----------|
| 1942 | Excess profits | $64,725.39 |
| 1943 | Income | 41,304.92 |
| 1944 | Excess profits | 18,362.11 |

The only issue before us is whether conveyances of certain lands by petitioner to the United States in 1940 in exchange for rights to cut and remove specified quantities of national forest timber constituted exchanges of property for property of like kind within the meaning of section 112 (b) (1), Internal Revenue Code.

All other issues in the petition grow out of and will be controlled by the ultimate decision with respect to the "exchange" question.

All of the facts are stipulated and are so found.

Petitioner, a Utah corporation, was organized under the laws of that state during the year 1889. Its principal office and place of business is at Baker, Oregon. The returns for the years involved were filed with the collector of internal revenue for the district of Oregon.

In 1940 petitioner was the fee simple owner of certain tracts of land within and adjacent to the national forests in Oregon. Part of this land contained standing timber and part of it had been cut over. Petitioner acquired some of this land prior to March 1, 1913, and the rest thereafter.

In 1940 petitioner and the United States entered into three agreements, sometimes referred to as Exchange #56, Dee Exchange, and Baker-Small Exchange, whereby the petitioner exchanged some of its land for national forest timber. These agreements were made under

an Act of Congress of March 20, 1922, 42 Stat. 465 (16 U. S. C. A. 485).[1]

In a deed dated September 23, 1940, petitioner conveyed to the United States all the land it had agreed to convey under a Land Exchange Agreement dated April 3, 1940. This was the transaction referred to as Exchange #56. Under it petitioner conveyed to the United States title to approximately 44,661 acres of land in exchange for the right to cut and remove an equal value of national forest timber on an area of about 110,000 acres within the Whitman and Malheur National Forests in Oregon. The lands conveyed to the United States contained 515,408 M feet of standing timber. At the time of this exchange the fair market value of the cutting rights acquired by petitioner from the United States was $2.85 per M feet. The March 1, 1913, fair market value of the land and timber conveyed by the petitioner to the United States adjusted to the date of the exchange was $779,987.42. The cost to petitioner of this land and timber adjusted to the date of the exchange was less than either the value of the cutting rights received by it, or the March 1, 1913, value of the land and timber conveyed.

The Land Exchange Agreement is extensive and detailed. It described the land to be conveyed and lists the areas in which petitioner might cut the timber as designated by the forest officer. In part, the agreement is as follows:

(a) The proponent agrees to convey to the United States under the said acts the lands described in "List A" attached hereto and made a part of this agreement.

(b) The United States agrees to grant in exchange for the offered land and timber, and the proponent agrees to cut and remove an equal value of National Forest timber on an area of about 110,000 acres to be definitely designated on the ground by the Forest officer in charge prior to cutting on the area described in "List B" * * *

\* \* \* \* \* \* \*

(c) It is mutually agreed by the parties hereto that a total volume of 328,000 M feet of ponderosa pine timber will be granted in exchange for the land and timber of the proponent.

The agreement also considered such items as the time allowed for cutting, the marking of timber, when it is to be cut, definition of mer-

[1] § 485. Exchange of lands in national forests; cutting timber in national forests in exchange for lands therein

When the public interests will be benefited thereby, the Secretary of the Interior is authorized in his discretion to accept on behalf of the United States title to any lands within the exterior boundaries of the national forests which, in the opinion of the Secretary of Agriculture, are chiefly valuable for national-forest purposes, and in exchange therefor may patent not to exceed an equal value of such national-forest land, in the same State, surveyed and non-mineral in character, or the Secretary of Agriculture may authorize the grantor to cut and remove an equal value of timber within the national forests of the same State; the values in each case to be determined by the Secretary of Agriculture. * * *

chantable logs, scaling, logging plans and methods, slash disposal, fire prevention, occupancy, and improvement.

In another deed dated February 19, 1940, petitioner conveyed to the United States all the land that it had agreed to convey under a Land Exchange Agreement dated June 8, 1939. This was the transaction referred to as the Baker-Small Exchange. Petitioner conveyed to the United States title to approximately 18,354 acres of cut-over land valued at $36,681.98 in exchange for the right to cut and remove an equal value in national forest timber on an area of about 12,812 acres in the Whitman and Malheur National Forests in Oregon. The March 1, 1913, fair market value of the cut-over land adjusted to the date of the exchange was $45,885.43. The cost to petitioner of this land as adjusted to the date of the exchange was less than the value of the cutting rights received by it, but the value of the cutting rights was less than the March 1, 1913, value of the land conveyed. This agreement, like the one in Exchange #56, is likewise detailed and extensive in its consideration of the cutting requirements, the logging operations, and fire prevention methods. The agreement is in part as follows:

(a) The proponent agrees to convey to the United States under the said acts the following described lands:

*     *     *     *     *     *     *

(c) The United States agrees to grant in exchange for the above described offered land and timber, and the proponent agrees to cut and remove, an equal value in National Forest timber on an area of about 12,812 acres to be definitely designated on the ground by the Forest Officer in charge prior to cutting in selected areas.

In another deed dated February 19, 1940, petitioner conveyed to the United States all the land that it agreed to convey under the Land Exchange Agreement dated August 17, 1939. This was the transaction referred to as Dee Exchange. Petitioner conveyed to the United States title to approximately 920 acres of land of the agreed value of $69,502.54 in exchange for the right to cut and remove an equal value of national forest timber then standing on an area of about 1,700 acres within the Mt. Hood National Forest in Oregon. The lands conveyed contained 40,300 M feet of standing timber. The March 1, 1913, fair market value of the land and timber conveyed by the petitioner to the United States adjusted to the date of the exchange was $52,979.54. The cost to the petitioner of this land and timber adjusted to the date of the exchange was less than either the value of the cutting rights received by it or the March 1, 1913, value of the land and timber conveyed.

The terms and the form of the Land Exchange Agreement in the Dee Exchange are similar to the agreements in the other two transactions.

The primary issue is whether the transactions between petitioner and the United States resulted in an exchange of property for property of like kind under section 112 (b) (1), Internal Revenue Code.[2] Petitioner contends that the transactions constituted taxable exchanges and that there was a recognized gain resulting from the exchanges. Respondent's position is that there was no recognizable gain or loss resulting from the exchange. In general, the theory of the petitioner is that it exchanged land for a right to cut and remove national forest timber and that this was an exchange of unlike property. Respondent's premise under the above facts is that the conveyance of standing trees upon land creates an estate upon condition, and therefore the transactions constituted exchanges of property of like kind.

To resolve these differences we must first determine what the parties exchanged. In Exchange #56 "the United States agrees to grant in exchange for the above described offered land and timber, and the proponent agrees to cut and remove, an equal value in National Forest timber." Again, in the Dee Exchange, "the proponent agrees to cut and remove an equal value of National Forest timber," and like words are used in the Baker-Small Exchange. We can only conclude that in each of the agreements petitioner's land was exchanged for the right to cut and remove standing timber. Next, we must ascertain whether the right to cut and remove standing timber passed to the petitioner as realty or as personalty.

The view most widely accepted is that growing trees constitute a part of the land and as such are real property. An agreement for their sale is a contract for the sale of an interest in land, and, for example, such an agreement is considered to be within the meaning of the statute of frauds. In some jurisdictions the courts have adopted what is known as the "immediate severance rule" which is to the effect that when standing timber is sold with the understanding that it is to be removed immediately, or in a reasonably continuous manner, the sale is considered as being one for the sale of chattels. A few jurisdictions without qualification or limitation of any sort subscribed to the view that contracts for the sale of growing timber do not contemplate the conveyance of any interest in land. See 7 A. L. R. 2d 517; also, 34 Am. Jur. 495.

On July 19, 1909, a decision was rendered by the United States District Court of Oregon involving the question whether the sale of standing timber was a conveyance of an interest in real property or a

---

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(b) EXCHANGES SOLELY IN KIND.—

(1) PROPERTY HELD FOR PRODUCTIVE USE OR INVESTMENT.—No gain or loss shall be recognized if property held for productive use in trade or business or for investment * * * is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.

transfer of personal property. We quote from the opinion of the court:

> Incidentally, the question has been presented whether the right to cut and remove standing timber is an interest in land which must be transferred by deed. In regard to the question, "it is now very generally recognized," say the authors of the American & English Encyclopedia of Law (volume 28, p. 541), "that a contract for the sale of trees, if the vendee is to have the right to the soil for a time for the purpose of further growth and profit, is a contract for an interest in land, but that where the trees are sold in the prospect of separation from the soil immediately or within a reasonable time, without any stipulation for the beneficial use of the soil, but with license to enter and take them away, it is regarded as a sale of goods only, and not within the fourth section of the statute." [*Goodnough Mercantile & Stock Co.* v. *Galloway*, 171 F. 940, 951.]

In 1919 the Uniform Sales Act was enacted into the Oregon Code. Sec. 71–176, vol. 5, O. C. L. A., pp. 381, 382 (sec. 76, Uniform Sales Act), provided:

> "Goods" include all chattels personal other than things in action and money. The term includes emblements, industrial growing crops, and things attached to or forming a part of the land which are agreed to be severed before sale or under the contract of sale.

In *Reid* v. *Kier* (1944), 175 Or. 192, 152 P. 2d 417, the Supreme Court of Oregon was called upon to interpret this section of the code as it applied to the sale of standing timber. One of the parties argued that under this section of the code standing timber, which was sold under a written agreement, must be regarded as personal property. The court, in a well written opinion, discussed the development of the Uniform Sales Act from its original source, the English Sale of Goods Act, to the present day Uniform Sales Act. The court concluded, on page 423, that "standing timber is deemed to be goods when and only when it is agreed to be severed before sale or under the contract of sale." In the *Reid* case there was no agreement that the standing timber was to be severed before sale or even at all. The court held that the Uniform Sales Act did not apply to the situation.

We can only conclude from the *Goodnough Mercantile & Stock Co.* case and the *Reid* case that in Oregon, when there is an agreement to cut and remove standing timber from the land immediately or within a reasonable time, the agreement is for the sale of goods only.

Focusing our attention on the agreements in the present case, we find in Exchange #56 "all timber marked for cutting shall be cut and removed on or before December 31, 1959"; in the Baker-Small Exchange "all timber marked for cutting shall be cut and removed on or before December 31, 1940"; in the Dee Exchange "all the timber granted on the described area under the exchange agreement shall be cut and removed from the cutting area prior to December 31, 1943." Thus, in each one of the agreements, there was a definite time limit

for cutting and removing the designated timber. We have no evidence or reason to believe that the time limits set up by the parties were unreasonable. Therefore, applying the rule as established in Oregon to these agreements, we find and so hold that in the exchange of land for standing timber to be cut and removed within a definite time petitioner acquired goods only and not realty.

An exchange of realty for personalty is not an exchange of property for property of like kind. Therefore, we are constrained to find for the petitioner.

While it is our conclusion that there was an exchange of realty for personalty, we are of the opinion that under the authority of certain Oregon cases it would not be improper to conclude that petitioner's real property was exchanged for a license to cut and remove standing timber. See *Elliott* v. *Bloyd*, 40 Or. 326, 67 P. 202; *Coquille Mill & Tug Co.* v. *Robert Dollar Co.*, 132 Or. 453, 285 P. 244. Under this theory an exchange of real property for a license would not be an exchange of property of like kind. Therefore, the exchange would be taxable.

In resolving this issue for the petitioner we are not unmindful of such cases as *Sandy Holding Co.* v. *Ferro*, 144 Or. 466, 25 P. 2d 561, and the cases cited therein, which indicate that a sale of standing timber is a conveyance of an estate upon condition subsequent. However, the issues involved therein are not similar to the one before us. Arguendo, if, from the record, we were able to find and hold that the standing timber was realty in the hands of the petitioner, we must nevertheless reach the same conclusion as above for the reasons stated below.

The situation presented here is not the first time we have been called upon to decide whether there is an exchange of like kind when one realty interest is exchanged for another. See *Midfield Oil Co.*, 39 B. T. A. 1154; *Kay Kimbell*, 41 B. T. A. 940. In *Midfield Oil Co.*, the taxpayer contended that an exchange of an oil and gas payment for an overriding oil and gas royalty was a nontaxable exchange under section 112 (b) (1). In finding for the respondent, we determined that there were substantial differences in the properties exchanged. The first difference was the quantum of interest in the property itself. The oil payment was a limited interest, once paid the liability was removed. On the other hand, the royalty interest was in the nature of a fee for it continued as long as gas and oil would be produced from the property.

By analogy to the present case petitioner exchanged a fee simple title for a limited right to cut and remove standing timber. It is our conclusion that the right to cut and remove standing timber is so intrinsically different from a fee in land that an exchange of one for the other is not an exchange of like property within section 112 (b) (1).

The right to cut and remove is transient and depends upon the affirmative action of the holder of that right. The fee is permanent and depends only upon the original grant. The right to cut and remove timber is more in the nature of utilization of land; the fee is ownership of the land itself. For these reasons we find and hold that the exchanges were not exchanges within section 112 (b) (1).

*Decision will be entered under Rule 50.*