Argued March 2, reversed and remanded March 16, 1960

# BURKHART *v.* CARTWRIGHT ET AL

350 P. 2d 185

*Willard Bodtker,* Albany, argued the cause for appellant. On the brief was Melvin Goode, Albany.

*Orval N. Thompson,* Albany, argued the cause for respondent. On the brief were Weatherford & Thompson, Albany.

Before MCALLISTER, Chief Justice, and ROSSMAN, PERRY and HARRIS, Justices.

PERRY, J.

The plaintiff John Burkhart brought this suit to restrain the defendant Henry H. Cartwright (whose name was erroneously stated in the pleadings as Henry L. Cartwright) and George Dunham from a threatened trespass upon his lands and as ancillary relief sought damages for injuries suffered by reason of a prior trespass.

The defendants denied a wrongful trespass and sought damages for breach of contract under which they assert plaintiff sold to the defendant Cartwright all of the growing timber upon approximately 9 acres of land.

In reply, the plaintiff admitted he had agreed to sell to defendant Cartwright trees on a certain portion of his land, but alleged this agreement only covered the timber on that certain portion of the 9 acres that was being taken by the Oregon State Highway Commission for highway purposes and that the past trespass and threatened trespass consisted of cutting timber on that portion of the land not being taken for highway purposes.

The trial court denied plaintiff's injunctive relief, found plaintiff had breached his agreement with defendant Cartwright, and awarded Cartwright a judgment in the sum of $2,091.13. From the decree of the trial court the plaintiff appeals.

Plaintiff's evidence is to the effect that he was the owner of approximately 9 acres of land and the State Highway Commission was appropriating approximately one-half of that area for highway purposes; that he was interested in selling the fir and oak timber on the right-of-way land; that on December 12, 1956, he was contacted at his home by defendant Cartwright who wanted to purchase trees; that plaintiff made an offer to sell the fir and oak timber at $2 per cord, but no contract was ever effected; that there was no discussion of trees other than those upon the property to be taken by the right-of-way. Plaintiff's statement of what occurred is as follows:

"Well, I told them that it was staked with laths four feet high with a red flag on every stake every hundred feet and the trail cut right through the timber and couldn't be no mistake and only about three acres and a half of this land that they was to take the timber off of, and I told them to look at it and let me know whether they'd take it or not, and I never seen them."

Plaintiff further stated that he told the defendant Cartwright the timber had to be removed by March 31st; that he later found the defendants had entered into and upon the land not being taken for highway purposes and were cutting trees thereon; that he ordered them to cease their activities and when they refused brought this suit.

The defendant Cartwright's version is that there was a meeting of the minds as to all of the timber on all of the property, his evidence being that he was in the fuel business; that he was interested in purchasing all of the fir and oak on these premises not just the portion being taken for highway purposes. Cartwright testified as follows:

> "A I told him that I had been to see the timber and he asked me if I wanted to buy it, and I told him that I would, and I asked him what he wanted for it and he said $2 a cord on the pine and fir and oak was of greater value for wood so he would like to have $3 on that. I told him that would be agreeable with me, and he agreed to that.
> "* * * * *
> "A Well, he said that that was all right. I asked him about the payment of the amount, how he wanted it paid, whether he wanted us to cut the whole amount before removing any or whether he wanted us to keep a record of what we hauled as we hauled it. He said that it was all right to do either way, to remove it by the load or to stockpile it and have it scaled, either way was okay with him.
> "* * * * *
> "A He mentioned that the highway was taking a portion of the property and he said it was staked off, and I told him, I said, 'I don't want no part of this timber unless I have all of it, all of it that is on the property. I don't want just the highway right-of-way property,' because you had to pull out onto

the state highway and it was no good place to pile your wood on the highway property. I mentioned to Mr. Burkhart that I didn't have no market for pine at the present time. The pine trees was standing on the other portion, other than the highway property.

"* * * * *

"Q And was there any discussion, and if so, what was said about the time limit on that?

"* * * * *

"A He told me that I could cut that on the right-of-way by April the 1st; that he had a deadline of April the 1st on it to remove it from the state highway property. He told me that I could yard the stuff from the state highway property to this other property and leave it for the period of one year or as long as I needed to remove it.

"* * * * *

"A Well, he said that we could remove the highway property by April the 1st and then we could remove the trees on the other property within one year's time."

The trial court accepted as true the defendant's testimony and we see no reason not to do likewise.

The question then posed is—What was the agreement of the parties and its legal effect?

■ It is clear there was an agreement to pay and an agreement to accept $2 per cord for the fir and $3 per cord for the oak and that this applied to all of the property, not just that portion being taken by the state; that payment could be made by the purchaser upon either ascertainment of the amount of wood after the whole was cut and before removal or by keeping record of what was cut and removed, and this at the option of the purchaser. In this respect, the record shows the purchaser elected to cut and remove as cut.

The defendant Cartwright was granted until the

1st of April to remove the timber on the right-of-way and a year to remove the fir and oak on the balance of plaintiff's property.

■ Growing timber is real property and any conveyance thereof separate and apart from the land must be in writing (*Anderson et ux v. Moothart,* 198 Or 354, 256 P2d 257), unless the agreement is such that the growing timber falls within the definition of "goods" under the Uniform Sales Act. *Paullus v. Yarbrough,* 219 Or 611, 347 P2d 620. To bring an oral agreement within the terms of the Act there must be found in the agreement an absolute duty upon the purchaser to sever the trees. *Reid v. Kier et al.,* 175 Or 192, 152 P2d 417. No such agreement here exists. The most that can be said is that the defendant had permission to enter into and cut the timber, which permission would terminate upon one portion of the property April 1st and on the other a year from the making of the agreement.

■ Under such circumstances, only an oral license to enter and cut was granted, title to the growing trees passing only after severance from the soil. The agreement of the parties being executory, the license could be revoked at any time, unless such valuable and permanent improvements had been made by the licensee in reliance thereon that its revocation would amount to the perpetration of a fraud. *Anderson et ux. v. Moothart,* supra.

■ The defendants expended some moneys for a tractor, the amount not being shown, to clear brush for a roadway on plaintiff's premises, and also expended $23.50 for gravel used on the road. We are of the opinion that these slight expenditures upon the road are not sufficient to be considered as such valu-

able and permanent improvements that a fraud would be perpetrated if the license is revoked.

The plaintiff is entitled to a decree permanently enjoining the defendants from entering in and upon plaintiff's land and falling any growing timber thereon. The decree should also provide that the defendants have the right to remove the timber cut by them prior to the commencement of this suit, or, if any of this cut timber has been converted by the plaintiff, a judgment should be entered in favor of the defendant Cartwright and against the plaintiff for the value thereof.

This cause is reversed and remanded with instructions to take such action and enter such decree as is consistent with this opinion.

Neither party shall recover costs in this court.